Sucesión Criado, Demandante y Apelante, *v.* Martínez et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de Ponce en pleito sobre reivindicación de bienes inmuebles, daños y perjuicios y nulidad de adjudicaciones.

No. 1459.—Resuelto en junio 5, 1917.

Albaceas—Deudas Hereditarias: Su Pago—Bienes de Menores—Herederos Necesarios—Autorización Judicial.—Cuando existen herederos necesarios menores de edad, los albaceas nombrados por el testador con facultades para el pago de sus deudas, no pueden adjudicar bienes inmuebles con tal objeto sin la intervención de los dichos herederos y sin la obtención de la autorización judicial previa que la ley exige para la venta de bienes de menores.

Id.—Prescripción.—La prescripción a que se refiere el artículo 1268 del Código Civil, no es aplicable al caso anterior cuando el albacea prescinde de los herederos y de la autorización judicial.

Recursos Gubernativos—Jurisprudencia.—Una resolución dictada en un recurso gubernativo, no establece jurisprudencia y por tanto el tribunal no está obligado a seguirla.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. Vicente Zayas Pizarro y Nemesio R. Canales.*

Abogados de los apelados: *Sres. José* y *Manuel Tous Soto.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

En el año de 1903 falleció don Miguel Criado y Blas, bajo testamento, dejando herederos necesarios y bienes de fortuna. La cláusula duodécima de su testamento, dice así:

"Nombra sus albaceas testamentarios, contadores, partidores y comisarios a su hermano Don Manuel Antonio Criado, principalmente por lo que respecta a los bienes de España y a Don Pedro José Alvarado, vecino de Barros, barrio de Bauta, en Puerto Rico y a Doña Rosa Rodríguez vecina de Juana Díaz, barrio de Hato Puerco Arriba, a los tres juntos e *insolidum*, facultándoles para incautarse de sus bienes, liquidar cuentas, fijar saldos, representar a la testamentaría en juicio y fuera de él, retirar y constituir depósitos, imposiciones y saldos de cuentas corrientes, vender bienes si necesario fuere para atenciones de su misma testamentaría y practicar todas las operaciones de ésta extrajudicialmente, pues prohibe en absoluto toda intervención judicial que no sea estrictamente indispensable, con prórroga del término legal del albaceazgo por un año más si lo necesitaran."

El 6 de abril de 1905, uno de los albaceas, Pedro José Alvarado, actuando como tal, por sí solo, sin la intervención de los herederos necesarios, que eran entonces menores de edad, ni autorización judicial, adjudicó a los demandados en pago de cierta deuda que contrajo en vida con ellos el testador, cuatro fincas rústicas por la suma de $5,261.08.

Los demandantes alegan que el albacea no tenía autoridad para hacer dicha adjudicación en tales condiciones. Los demandados sostienen que la tenía. La corte dió la razón a los demandados, y los demandantes entonces interpusieron el presente recurso de apelación.

Aceptando que por virtud de la cláusula transcrita, el testador hubiera autorizado a sus albaceas para adjudicar bienes en pago de deudas, esto no obstante opinamos que al cumplir su encargo, no pudieron dichos albaceas prescindir de los herederos necesarios, que eran entonces los únicos dueños de los bienes, y que siendo menores de edad los here-

deros, la adjudicación no pudo realizarse válidamente sin la intervención de los tribunales.

Cuando murió el testador y cuando se adjudicaron los bienes, regía en esta Isla el Código Civil revisado, que en su artículo 875 dispone que "los albaceas tendrán todas las facultades que expresamente les haya conferido el testador, y no sean contrarias a las leyes."

El testador no autorizó a sus albaceas expresamente para prescindir de sus herederos necesarios, pero se alega que habiendo sido autorizados en general para vender bienes sin referencia a los herederos, tenían plenas facultades para actuar como lo hizo uno de ellos en este caso, por sí solos. Sostenemos que si se interpreta de ese modo, como se ha interpretado por los demandados y por la corte sentenciadora, la cláusula testamentaria que dejamos transcrita, entonces la facultad conferida al albacea resultaría contraria a las leyes y no tendría por tanto validez.

Mientras la herencia permanece yacente por habérse abstenido de aceptarla los llamados por la ley, se supone existente la personalidad del difunto. (Sent. del T. S. de Esp. de 5 de junio de 1861.) Esa regla aplicada en toda su integridad a todos los casos, es la que produce, a nuestro juicio, la diversidad de opiniones con respecto a las facultades de los albaceas en herencias no yacentes, sino aceptadas por los herederos. Se comprende que cuando no haya herederos, el albacea pueda actuar sin su intervención, pero cuando existen herederos que, según la ley, artículo 669 del Código Civil revisado, "suceden al difunto por el hecho solo de su muerte, en todos sus derechos y obligaciones," no puede prescindirse de ellos. Sostener que un testador pueda ordenar que después de su muerte una persona extraña a la herencia, venda los bienes inmuebles de la misma sin la intervención de sus herederos necesarios, sean éstos mayores o menores de edad, sería destruir todo el sistema puesto en vigor por el

Código Civil, especialmente por las disposiciones generales contenidas en sus artículos 664a al 669.

Según la jurisprudencia del Tribunal Supremo de España "los albaceas contadores tienen el carácter de mandatarios del testador y no de los herederos" (78 Jurisprudencia Civil, 26), debiendo acomodarse en el cumplimiento de su encargo a las condiciones del mandato "en todo lo que no se halle particularmente regulado" (100 Jurisprudencia Civil 391). Es así que la venta de bienes de menores se halla particularmente regulada por la ley, luego en un caso en que existan herederos menores de edad, el albacea aunque hubiere sido expresamente autorizado por el testador para vender bienes inmuebles para pago de deudas, a los efectos de realizar válidamente esa operación, tendría que ajustarse a las reglas establecidas por la ley para la venta de bienes de menores.

Si estudiamos la legislación antigua, encontraremos por ejemplo que la ley 62, del título 18 de la partida 3, regula entre otros el caso de venta de bienes de un testador para el pago de sus deudas, habiendo el testador otorgado al albacea poder para vender. El procedimiento fijado no es igual al establecido para la venta de bienes de menores por la ley 60, del mismo título y partida, y se resolvió que ambas leyes podían armonizarse, cumpliendo el albacea cuando existían menores con los requisitos fijados por la ley para la venta de sus bienes. Véase: 1 Escriche, Diccionario de Legislación, pág. 395, segunda columna; y 3 Códigos Españoles Concordados y Anotados, 218 y 219.

"Aun cuando dichos albaceas o testamentarios," dijo el Supremo de España en sentencia de 22 de octubre de 1857, tengan el carácter de árbitros arbitradores y amigables componedores, no pueden enajenar bienes de la testamentaría sin formalizar inventario, mucho menos habiendo herederos necesarios y menores." Y dijo además, "que los albaceas no pueden enajenar lo que corresponde a menores, sin que se

justifique la necesidad o utilidad, y sin que intervenga el guardador y preceda la autorización del juez, no pudiendo dispensarse de estas formalidades por amplio que sea su mandato,'' 2 Jurisprudencia Civil 406, 407.

A nuestro juicio el artículo 875 del Código Civil revisado, igual al 901 del Código Civil antiguo, no varió esencialmente el concepto de la legislación anterior con respecto al cargo de albacea. Falcón en una nota al artículo 901 del Código Civil Español, en el tomo 3, página 284, de sus comentarios, dice:

"Procede del artículo 902 del referido Proyecto,'' (el de 1882), "conforme con la primera parte del artículo 728 del proyecto de 1851. En el fondo, la doctrina procede de la ley 32, título 9°. de la part. 6ª., que a su vez la tomó de la ley 55, libro 31 del Digesto.''

Existe un error en la cita de la Ley de Partidas. En vez del título noveno, debe ser el título diez que trata de los *"executoribus textam.''* Véase: 4 Códigos españoles, 163.

Antes y ahora se consideró y se considera al albacea como mandatario del testador y no de los herederos. Antes y ahora se estimó y se estima que es la voluntad del testador la que debe cumplirse. Pero antes tuvieron como tienen ahora esos principios la limitación de que lo que se ordene realizar o se realice por el testador y por el albacea no sea contrario a la ley. Por encima del individuo está la sociedad que regula sus acciones por medio de leyes decretadas por organismos especialmente creados para ello.

No están acordes los comentaristas españoles sobre la materia. La opinión de Manresa parece inclinarse a la facultad del albacea para vender bienes, cuando ha sido autorizado por el testador, prescindiendo de los herederos. (6 Manresa, Código Civil, 752 y siguientes.) Galindo y Escosura sostienen tal teoría. (2 Galindo y Escosura, Legislación Hipotecaria, 73 y siguientes.) Y también Sánchez Román. (Sánchez Román, Derecho Civil, 1425.) Por el contrario Scaevola dice, con razón a nuestro juicio, que "si los padres por sí

mismos no pueden proceder a la enajenación de bienes de sus hijos, que administran y usufructúan, mal podrán autorizar a otras personas como son los albaceas, a que vendan objetos de la herencia en cuya trasmisión se halle interesado el hijo menor. La venta se verificará entonces, por tanto, con autorización judicial.'' 15 Scaevola, Código Civil, 480.

Las resoluciones de la Dirección General de los Registros también están en desacuerdo, pues mientras unas favorecen la teoría sustentada por los demandados y por la corte sentenciadora, otras sostienen el criterio de los apelantes. A nuestro juicio la argumentación de las últimas armoniza mejor todos los preceptos del código, ya que reconociendo las facultades del testador y del albacea, reconocen también los derechos de los herederos, mayores o menores de edad, aplicando así íntegramente el pensamiento del legislador sobre la materia. Nos limitaremos a citar la de 30 de mayo de 1895. El primero de sus considerandos, dice así:

''La escritura de venta presentada a inscripción en el registro se otorgó por un albacea que, si bien tenía facultad para vender por el testamento, prescindió de la intervención que para ello necesitaba legalmente del heredero forzoso que sucedía al causante, y que, según parece resultar del expediente, se hallaba además ausente, siendo por tales razones justificada la denegatoria de la inscripción, sin que fuera posible que se amparase el albacea en el precepto del artículo 901 del Código Civil sólo porque establece que los albaceas tendrán las facultades que les confiera el testador, pues el mismo precepto establece la expresa limitación de que no han de oponerse a la ley, y reconociendo ésta en el heredero forzoso, por lo que respecta al caso discutido, un derecho anterior e independiente a todo testamento, cuanto en él se oponga, limite, contradiga o perjudique ese derecho una vez reconocido, no puede prevalecer igualmente sin su intervención, en la forma que según los casos se halla establecido.'' 3 Jurisprudencia referente al Código Civil por V. A. M. 161.

La resolución de esta Corte Suprema en el caso de *Martínez* v. *Registrador*, 15 D. P. R. 70, no establece jurisprudencia, ya que se dictó en un recurso gubernativo, y sometidos sus

razonamientos a prueba en este caso, nos vemos obligados, por los motivos que hemos expuesto, a dejar de seguirlos.

Deseamos consignar por último que ha tenido una gran influencia en la decisión que hemos adoptado la opinión emitida por la Corte Suprema de los Estados Unidos en el caso de *Longpré* v. *Díaz,* 237 U. S. 512, citada y aplicada por nosotros en el de *Del Rosario et al.* v. *Rucabado et al.,* 23 D. P. R. 473. Si bien los casos no son enteramente iguales, puede observarse sin dificultad alguna que examinados los hechos y la ley en este pleito a la luz de los principios establecidos por la Corte Suprema en el caso de Longpré, *supra,* no es posible llegar a otra conclusión que no sea a la de que el albacea Alvarado no pudo vender los bienes de los menores demandantes sin cumplir los requisitos exigidos en general por la ley para la venta de bienes de menores.

En cuanto a la prescripción, basta invocar la doctrina establecida por la Corte Suprema de los Estados Unidos en el repetido caso de Longpré, *supra,* y por esta corte en los de *Oliver et al.,* v. *Oliver,* 23 D. P. R. 181, y *Sucesión Suro* v. *Prado et al.,* 21 D. P. R. 241, para concluir que no es aplicable a este pleito el plazo de cuatro años a que se refieren los demandados. La acción ejercitada no ha prescrito.

Por virtud de todo lo expuesto, procede la revocación de la sentencia apelada debiendo devolverse el caso a la corte de distrito de su origen para ulteriores procedimientos no inconsistentes con esta opinión.

> *Revocada la sentencia apelada y devuelto el caso a la corte inferior para ulteriores procedimientos no inconsistentes con la opinión.*

Jueces concurrentes: Sres. Asociados Wolf y Hutchison, habiendo firmado el primero "conforme con la sentencia."

Los Jueces Sres. Presidente Hernández y Asociado Aldrey disintieron.

OPINIÓN CONCURRENTE EMITIDA POR EL JUEZ ASOCIADO SR. WOLF.

Estimo que no hace diferencia alguna que pueda establecerse en contra de un albacea, el que los menores sean o no herederos forzosos. La facultad dada al albacea, si es que alguna se le dió, para pagar deudas mediante determinados traspasos de bienes, está sujeta a los derechos de los herederos forzosos, y antes de que tal traspaso tenga lugar, los citados herederos forzosos, si su consentimiento no puede obtenerse, deben ser citados y oídos. Aunque creo que el *status* de los herederos nada importa, sin embargo, como en la inmensa mayoría de las herencias hay menores, la intención de la legislatura de establecer una excepción en favor de un albacea para permitirle enajenar bienes sin autorización, no está manifiesta.

Aun más, en este caso el albacea fué sólo autorizado para vender la propiedad, si fuese necesario. Esta es una facultad muy distinta del poder para hacer una adjudicación de terrenos en pago de una deuda, según se intentó hacer en este caso. Los poderes deben ser interpretados estrictamente.

OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SR. HERNÁNDEZ, CON LA QUE ESTÁ CONFORME EL JUEZ ASOCIADO SR. ALDREY.

La Sucesión de Miguel Criado y Blas, constituída por sus hijos naturales reconocidos Rosa, Aurora, María y Miguel Criado y Rodríguez, representados los dos últimos como menores de edad por su madre natural Rosa Rodríguez de la Torre, presentó demanda ante la Corte de Distrito de Ponce contra Angel y Manuel Martínez Caballero, con súplica de que se declarara nula cierta escritura de adjudicación en pago otorgada por Pedro José Alvarado como albacea testamentario de Miguel Criado y Blas a favor de los demandados, y nula también su inscripción en el registro, decretando que la sucesión demandante es la única dueña en absoluto dominio de las fincas adjudicadas y condenando a los demandados a que las restituyan a los demandantes y paguen a éstos la

suma de $18,000 en concepto de indemnización de daños y perjuicios, con imposición a los demandados de costas, desembolsos y honorarios de los abogados de los demandantes.

Celebrado el juicio la corte dictó sentencia en 27 de julio de 1913 declarando sin lugar la demanda por estimar que no era nula la adjudicación en pago hecha por el albacea a favor de los demandados y por haber prescrito la acción ejercitada de acuerdo con el artículo 1268 del Código Civil, contra cuya sentencia interpuso la representación de la sucesión demandante recurso de apelación para ante esta Corte Suprema.

Los hechos según resultan de la demanda y de la contestación, de las pruebas practicadas en el juicio y de las admisiones de ambas partes consignadas en el escrito de exposición del caso, son los siguientes:

1°. Miguel Criado y Blas falleció en el año 1903 dejando como sucesores o herederos del mismo a cuatro hijos naturales reconocidos procreados en Rosa Rodríguez de la Torre, nombrados Rosa, Aurora, María Manuela y Miguel, y nacidos respectivamente en los años de 1887, 1889, 1894 y 1897.

2°. Ocurrió el fallecimiento de Miguel Criado y Blas bajo testamento otorgado en Madrid, España, en 20 de septiembre de 1903, cuya cláusula duodécima que es la atinente al caso, dice literalmente así:

"*Duodécima.*—Nombra sus albaceas testamentarios, contadores-partidores y comisarios, a su hermano Don Manuel Antonio Criado, principalmente por lo que respecta a los bienes de España, y a Don Pedro José Alvarado, vecino de Barros, barrio de Bauta, de Puerto Rico, y a Doña Rosa Rodríguez, vecina de Juana Díaz, barrio de Hato Puerco Arriba, a los tres juntos e *insolidum*, facultándolos para incautarse de sus bienes, liquidar cuentas, fijar saldos, representar a la testamentaría en juicio y fuera de él, retirar y constituir depósitos, imposiciones y saldos de cuentas corrientes, vender bienes si necesario fuere para atenciones de su misma testamentaría y practicar todas las operaciones de ésta extrajudicialmente, pues prohibe en absoluto toda intervención judicial que no sea estrictamente indispensable, con prórroga del término legal del albaceazgo por un año más si lo necesitaran."

Por escritura pública No. 76 otorgada en la villa de Juana Díaz a 6 de abril de 1905 ante el notario don Felipe Rodríguez, Pedro José Alvarado y Rivera en su calidad de albacea testamentario del finado Miguel Criado y Blas, según la cláusula testamentaria que dejamos transcrita y que también se inserta en dicha escritura, adjudicó a los demandados Angel y Manuel Martínez Caballero en pago de un crédito de $5,261.08, cuatro fincas rústicas del haber hereditario, las que se describen en el mismo documento.

En la fecha de la adjudicación en pago de que se deja hecho mérito, 6 de abril de 1905, ninguno de los herederos de Miguel Criado y Blas, hoy demandantes, había llegado a la mayoría de edad y la escritura se otorgó sin intervención de dichos herederos, ni de la autoridad judicial.

Ambas partes, demandante y demandada, están conformes en que la única cuestión a resolver en el presente caso es la de si un albacea que ha sido autorizado por el testador para vender bienes si necesario fuese para atenciones de su testamentaría tiene facultad para adjudicar bienes inmuebles del mismo a un acreedor en pago de deuda sin otra formalidad que el mero otorgamiento de escritura, estando interesados en la herencia menores de edad, y si en su consecuencia es nula o no la escritura de adjudicación de que se trata.

Para mejor precisar los términos del judicial debate, parécenos que la cuestión a considerar y resolver es la de si un albacea autorizado para vender bienes del testador puede hacerlo sin intervención de los herederos interesados, pues si esa intervención en términos generales no es necesaria, innecesaria sería también la intervención judicial cuando haya herederos menores de edad.

El artículo 875 del Código Civil Revisado, marca la regla o norma que ha de servir para determinar en principio las facultades de los albaceas, en los siguientes términos:

"Artículo 875.—Los albaceas tendrán todas las facultades que

expresamente les haya conferido el testador, y no sean contrarias a las leyes."

Para el caso de que el anterior precepto no pueda tener aplicación, el artículo 876 establece cuáles hayan de ser las facultades de los albaceas:

"Artículo 876.—No habiendo el testador determinado especialmente las facultades de los albaceas, tendrán las siguientes:

" "1. Disponer y pagar los sufragios y el funeral del testador con arreglo a lo dispuesto por él en el testamento; y en su defecto, según la costumbre del pueblo.

"2. Satisfacer los legados que consistan en metálico, con el conocimiento y beneplácito del heredero.

"3. Vigilar sobre la ejecución de todo lo demás ordenado en el testamento, y sostener, siendo justo, su validez en juicio y fuera de él.

"4. Tomar las precauciones necesarias para la conservación y custodia de los bienes, con intervención de los herederos presentes."

Como adición y complemento del artículo 876, viene el 877:

"Artículo 877.—Si no hubiere en la herencia dinero bastante para el pago de funerales y legados, y los herederos no lo aprontaren de lo suyo, promoverán los albaceas la venta de los bienes muebles; y no alcanzando éstos, la de los inmuebles, con intervención de los herederos.

"Si estuviere interesado en la herencia algún menor, ausente, corporación o establecimiento público, la venta de los bienes se hará con las formalidades prevenidas por las leyes para tales casos."

Dicho artículo 877 es aplicable al caso a que se refiere el artículo 876, es decir, cuando los albaceas obran por mera autorización de la ley, pero no al caso previsto en el artículo 875, o sea, cuando obran con facultades expresas del testador.

El precepto del artículo 875 es general y absoluto y no le afecta otra condición que la de que las facultades conferidas por el testador al albacea no sean contrarias a las leyes. No existe ley alguna que ordene que en la venta de bienes inmuebles que haga el albacea, facultado para ello por el tes-

tador, deban intervenir los herederos, y por tanto la falta de esa intervención no es contraria a la ley.

Comentando Manresa el artículo 901 del Código Civil español, 875 del nuestro, se expresa en los siguientes términos:

"La voluntad del testador es ley preferente en la materia   *   *   *

"El testador, al facultar la venta de bienes, así como puede determinar su objeto, puede también fijar su forma a los requisitos con que ha de llevarse a efecto; puede exigir subasta pública o que intervengan los herederos, o que medien otras formalidades; mas si faculta en absoluto para enajenar todos los bienes o una parte de ellos, sin añadir limitación alguna, el albacea puede enajenar en la forma que crea más conveniente, *sin que pueda exigirse la intervención de los herederos,* ni el requisito de la subasta, ni otra formalidad alguna, cuando éstos sean voluntarios.   El artículo 903 (877 del revisado) no es aplicable, porque en él venden en realidad los herederos con intervención del albacea que no recibió facultades especiales del testador, mientras que los herederos son extraños al acto cuando el testador autoriza expresamente al albacea para vender, sin limitar su autorización."   6 Manresa, Código Civil, 752, 754 y 755.

Y no cabe deducir que según el ilustrado comentarista, cuando los herederos son forzosos es necesaria su intervención en la venta, pues el mismo Manresa, tomo 6, página 756, dice:

"No quebrantando la facultad ningún precepto de derecho escrito, es ley la voluntad del testador.   Así lo establece la sentencia de 27 de enero de 1896, confirmando la doctrina del artículo 901 (875 del revisado).   *La facultad de vender para pago de deudas, no puede decirse contraria a las leyes por el solo hecho de existir herederos forzosos.*   Sólo después de pagadas las deudas se fija la legítima y la porción libre si resultase algún perjuicio a los herederos forzosos por haberse vendido los bienes por menos de su valor, podrían, como afirma el Sr. Escosura en sus comentarios a la Ley Hipotecaria, reintegrarse con la parte libre, o en último término, reclamar contra los albaceas o ejercitar las acciones que estimasen convenientes para la reparación del perjuicio."

La sentencia del Tribunal Supremo de España de 27 de enero de 1896, citada por Manresa, establece que para determinar las facultades y, por tanto, la personalidad de los

albaceas testamentarios, hay que estar a la voluntad del testador.

Los señores Galindo y Escosura, ilustrados comentaristas de la legislación hipotecaria, sostienen la misma doctrina en los siguientes términos:

"¿Puede sostenerse que tal facultad (la de enajenar para pago de deudas que con tanta frecuencia se concede a los albaceas) es contraria a las leyes?

"Si sólo hay herederos voluntarios, desde luego puede asegurarse que no, porque sólo lo son en virtud de la voluntad del testador, a la que en absoluto han de estar sometidos. (V. Resolución de 5 de noviembre, 1887, y 16 de septiembre 1890.)

"Si hay herederos forzosos, no es tan llano decirlo. La resolución de 30 de mayo, 1893, del Ministerio de Ultramar, declara que no es inscribible la escritura otorgada por el albacea facultado para vender, si no ha intervenido el heredero; y se funda en que si bien el artículo 901 del Código Civil (875 del revisado) establece que los albaceas tendrán todas las facultades que el testador les haya conferido, el mismo artículo consigna la limitación de que no sean contrarias a las leyes y lo es la de vender sin intervención del heredero forzoso. *Esta última afirmación no se prueba, puesto que no se dice a qué precepto legal es contraria.*

"Lo único alegable es que al hacer uso de tal facultad, puede el albacea perjudicarle en su legítima, no debida a la voluntad del testador, sino a la ley, que no consiente se imponga sobre ella gravamen, ni condición, ni sustitución de ninguna especie.

"Este argumento pierde su fuerza con sólo considerar que para fijar la legítima, hay que atender al valor de los bienes que quedaron a la muerte del testador, *con deducción de las deudas y cargas.* (Arts. 813 y 818.)

"Luego si la legítima es la porción que al heredero forzoso corresponde en la herencia *después de deducidas las deudas,* no puede sostenerse que la facultad que el testador confiera al albacea para vender fincas con que atender al pago de las deudas, sea un gravamen, ni condición, ni sustitución de ninguna especie impuestos sobre la legítima.

"Esta sólo da derecho a la porción en que consista; no a impedir que se enajenen bienes para pago de deudas, ni a que esto se haga sin su intervención, cuando el testador no ha querido, ni a que el pago se verifique en determinados bienes; y prueba de ello es que

los artículos 1056 y 1057, autorizan al testador, no sólo para hacer por sí mismo y en acto entre vivos y por última voluntad la partición de sus bienes, y hasta para disponer que se entregue en metálico la porción legítima a determinados hijos, sino para encomendar a cualquiera persona la simple facultad de hacer la partición, y los herederos habrán de estar y pasar por ella en tanto que no perjudique a las legítimas.

    ✻      ✻      ✻      ✻      ✻      ✻      ✻

"Tal es nuestro modo de pensar, conforme en todo con la Dirección de los Registros, que en el tercer Considerando de la resolución de 10 de mayo de 1890, sienta la doctrina de que la facultad concedida a los albaceas de vender bienes para pago de deudas, no es contraria a las leyes, haya o nó herederos forzosos." Galindo y Escosura, Legislación Hipotecaria, Tomo 2º., páginas 73 a 75, edición de 1903.

Los artículos 813, 818, 1056 y 1057, del Código Civil español citados por Galindo y Escosura son los 801, 806, 1023 y 1024 del código revisado.

En la resolución de 10 de mayo de 1890, la Dirección General de los Registros de España declaró que no era inscribible una escritura de venta de bienes inmuebles otorgada por un albacea o testamentario nombrado por el testador con las facultades necesarias para ejecutar su última voluntad, incluso para vender lo que fuere preciso con objeto de satisfacer las deudas del testador y practicar las operaciones de partición.

En ese recurso se sostuvo la improcedencia de la inscripción por no haber intervenido los herederos del testador en la escritura de venta, y la Dirección General de los Registros desestimó ese motivo y declaró que la venta no era inscribible ínterin no se acreditara que se verificó la venta para pago de deudas del testador, estableciendo como fundamentos de su resolución: que habiendo ocurrido el fallecimiento del testador ✻ ✻ ✻ con posterioridad a la vigencia del Código Civil, los albaceas nombrados por aquél deben someterse en el ejercicio del cargo a las prescripciones del Código, según se deduce de sus disposiciones transitorias; que el artí-

culo 901, antes citado, (875 del revisado) declara que los albaceas tendrán todas las facultades que expresamente les haya conferido el testador y no sean contrarias a las leyes; que a la facultad conferida al albacea   *   *   *   de vender los bienes para pago de deudas, haya o no herederos forzosos, no debe ponérsele otro límite al uso de la misma que el que le haya puesto el testador; y que en el caso que ha dado origen al recurso no acredita el albacea, por más que lo asegure, que la venta se verifica para pago de deudas, circunstancia precisa para decidir si obra o no en el uso de la facultad que le fué conferida.

Como se ve, según la resolución de 10 de mayo de 1890 el ejercicio de la facultad de vender bienes otorgada al albacea no tiene otra limitación que la que le haya puesto el testador, y por tanto cuando éste no exige que intervengan los herederos en la venta la intervención no es necesaria, si bien el albacea debe acreditar que en el uso de aquella facultad se atemperó a la voluntad del testador.

De dicha resolución se aparta la posterior de 30 de mayo de 1895, que impugnan Galindo y Escosura y que la parte apelante copia íntegra en su alegato escrito para sostener su contención.   Esa resolución establece que está bien justificada la denegatoria de la inscripción de la escritura de venta otorgada por un albacea que si bien tenía la facultad de vender por el testamento, prescindió de la intervención que para ello necesitaba legalmente del heredero forzoso que sucedía al causante y que según parece resultar del expediente, se hallaba además ausente, sin que fuere posible que se amparase el albacea en el precepto del artículo 901 del Código Civil, sólo porque establece que los albaceas tendrán las facultades que les confiera el testador, pues el mismo precepto establece la expresa limitación de que no han de oponerse a la ley, y reconociendo ésta en el heredero forzoso, por lo que respecta al caso discutido, un derecho anterior e independiente a todo testamento, cuanto en él se oponga, limite, contradiga o perju-

dique ese derecho, una vez reconocido no puede prevalecer igualmente sin su intervención en la forma que según los casos se haya establecido.

Nos parecen atendibles las razones que aducen Galindo y Escosura para impugnar la resolución de 30 de mayo de 1895, y prestamos nuestra adhesión a la anterior de 10 de mayo de 1890 por estar más conforme con la letra y espíritu de la ley y con la naturaleza del albaceazgo.   Y robustece nuestra opinión el sabio catedrático español, Sánchez Román, quien en su obra de Derecho Civil se expresa así:

"Esta facultad de enajenar, concedida en términos absolutos, todos o parte de los bienes sin determinar formas, requisitos, ni intervenciones de otras personas, autoriza al albacea para enajenar en cualquier forma y sin que sean precisos el conocimiento, beneplácito, ni intervención de los herederos, porque estos requisitos, a que se refieren los artículos novecientos dos y novecientos tres, corresponden al régimen legal y subsidiario del albaceazgo en defecto del voluntario libremente establecido por el testador y regulado por el principio general del artículo 901, que proclama la supremacía de la voluntad del testador en punto a facultades de los albaceas, siempre que las que confiera a éstos no sean contrarias a las leyes, cuya medida consiste en que se repute que los albaceas puedan hacer todo lo que podría hacer el testador por sí mismo, si el testador les faculta expresamente para ello, bajo un criterio de completa libertad y sin más limitación que las prohibiciones legales."   6 Sánchez Román, 1426.

Y no favorece Scaevola la teoría de la parte apelante.  Los conceptos que de Scaevola se transcriben fueron emitidos como interpretación al 2º. apartado del artículo 903 del Código Civil español (877 del revisado) y como resolución a la cuestión planteada sobre la intervención que deban tener los padres en la venta hecha por los albaceas cuando representen a hijos menores de edad.   15 Scaevola, Código Civil, 480.  En el caso a que se refiere Scaevola nosotros opinamos con él que es necesaria la intervención judicial en la venta; pero como el mismo Scaevola, comentando el artículo 901 del Código Civil español (875 del revisado), parece mostrar su conformidad

con la resolución de la Dirección General de los Registros de
30 de mayo, 1895, debemos añadir que esa actitud no está con-
forme con la que adopta al ocuparse de las formalidades que
han de llenar los albaceas para la venta judicial de bienes
hereditarios cuando llegue el caso previsto en el artículo 903
del Código Civil español (877 del revisado) pues después de
describir esas formalidades concluye expresándose en los si-
guientes términos:

"Por último el mismo orden de colocación de los artículos 901,
902 y 903, y la amplitud de importancia que debe otorgarse siempre
a toda manifestación del testador autorizan a afirmar que las reglas
especiales enumeradas sobre venta de bienes hereditarios, no regirán
cuando el albacea fué autorizado en testamento para vender bienes
de la herencia.  Ya la sentencia de 28 de junio de 1882, según diji-
mos, dejó declarado que la Ley 62, Título XVIII, Partida 3ª., si
bien establece el principio de que las ventas que otorguen los alba-
ceas hayan de ser en almoneda, *porque non se pueda hi facer engaño,*
esto solamente se entiende en los casos ordinarios de albaceazgo y
no en los en que el testador autoriza a sus albaceas con facultades
extraordinarias y prescribe el modo en que han de venderse sus bienes
para el cumplimiento de su voluntad, única norma a que deben
subordinarse sus actos."  15 Scaevola, Código Civil, 487.

El albaceazgo constituye por su naturaleza un verdadero
mandato a cuyas condiciones deben acomodarse los albaceas
en todo lo que no se halle particularmente regulado, según
sentencia del Tribunal Supremo de España de 24 de febrero
de 1905, teniendo los albaceas el carácter de mandatarios del
testador en cuanto atañe al cumplimiento de su cometido,
según sentencia anterior del mismo tribunal de 17 de abril
de 1900.  La venta de bienes de menores, en la fecha en que
se verificó la adjudicación de cuya nulidad se trata, o sea, en
6 de abril de 1905, se hallaba particularmente regulada por el
artículo 229 del Código Civil entonces vigente, cuando dicha
venta se hacía por los padres, o por el artículo 282 del
mismo código si había de hacerse por el tutor; pero si
la venta había de hacerse por albacea expresamente au-

torizado por el testador para vender, no aparece en dicho código precepto. alguno a que deba sujetarse el albacea, por más que cuando el testador no le haya conferido expresamente aquella facultad necesitará para la venta de la intervención de los herederos y en su caso de la autorización del poder judicial. Nos referimos a los artículos 875, 876 y 877 que dejamos transcritos. Las Leyes de Partidas y la jurisprudencia del Tribunal Supremo de España interpretando esas leyes no son de aplicación al presente caso en cuanto se opongan a los preceptos del Código Civil que son los que deben regularlo.

Remontándonos a doctrina de la Dirección General de los Registros de España anterior a la vigencia del Código Civil encontramos que dicha dirección por resolución de 18 de octubre de 1869 establece la doctrina de que si bien la ley 62, Título XVIII, partida 3ª., ordena que la venta que hagan los albaceas sea en pública subasta, esa regla general no se extiende a los casos en que la voluntad del testador haya podido disponer otra cosa, por ser ley en materia de testamentos, y diciéndose en la cláusula 7ª. del otorgado por el Marqués de Algorfa que daba facultades a sus albaceas para proceder a la venta de los bienes que fuese necesaria para la división del caudal, así muebles como inmuebles, sin que autoridad ni persona alguna pudiera entrometerse en ello a pretexto de querer tomar cuentas u otro motivo, está fuera de toda duda que el albacea pudo vender sin pública almoneda como lo comprueba la sentencia de 17 de enero de 1866.

Obrando como obra el albacea en representación del testador, cuando éste le faculta para vender bienes del mismo sin exigir la intervención de los herederos, no cabe exigir la intervención como requisito necesario para la venta. El albacea es una prolongación o continuación de la personalidad del testador y no es posible imponerle condiciones que el testador no le impuso para ejecutar aquellos actos a que expresamente le autorizó.

En el presente caso el testador Miguel Criado y Blas auto-

rizó a sus albaceas, entre éstos a Pedro José Alvarado, para incautarse de sus bienes, liquidar cuentas, fijar saldos, representar a la testamentaría en juicio y fuera de él, retirar y constituir depósitos, imposiciones y saldos de cuentas corrientes, *vender bienes, si necesario fuere, para atenciones de su misma testamentaría* y practicar todas las operaciones de ésta extrajudicialmente, prohibiendo en absoluto toda intervención judicial que no sea estrictamente indispensable.

El testador Miguel Criado y Blas, al facultar expresamente a sus albaceas para vender bienes si necesario fuere para atenciones de su testamentaría, no estableció excepción alguna entre bienes muebles, semovientes o inmuebles, y la necesidad de la venta quedaba a la apreciación de los albaceas, sin más restricción que la de que había de hacerse para atenciones de su testamentaría. Y "por testamentaría, voz derivada de testamento," como dicen los Sres. Manresa y Reus, "se entiende todo lo que se refiere a la ejecución de las últimas voluntades: así es que se da este nombre a la reunión de los albaceas testamentarios; al conjunto de documentos y demás papeles que son necesarios para dar cumplimiento a la voluntad del testador; a las diligencias y operaciones que extrajudicial y privadamente practican los ejecutores testamentarios o los mismos herederos para el inventario, avalúo, pago de deudas y legados, liquidación y división de la herencia, y para la ejecución de lo demás que haya ordenado el testador; y por último a las actuaciones judiciales que con este mismo objeto se promuevan alguna vez de oficio y otras veces a instancia de parte legítima." Entre las atenciones de la testamentaría de Miguel Criado y Blas estaba preferentemente comprendido el pago de las deudas, pues mientras éstas existieran no podía haber herencia. "La herencia," dijo el Rey Sabio, "es la heredad, e los bienes, e los derechos de algún finado, sacando ende las debdas que debía e las cosas que y fallaren agenas."

De todos modos para determinar la voluntad del testador

Miguel Criado y Blas respecto de las facultades de sus albaceas, invocamos el artículo 683 del Código Civil, que dice así: "Toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fué otra la voluntad del testador. En caso de duda se observará lo que parezca más conforme a la intención del testador, según el tenor del mismo testamento."

La extención que damos a las facultades expresamente conferidas por el testador a los albaceas no destruye el sistema puesto en vigor por el Código Civil, especialmente por las disposiciones generales contenidas en sus artículos 664a al 669. Esas disposiciones no están en contradicción con el concepto que hemos formado del albaceazgo voluntario establecido por el testador y regulado por el artículo 875 del Código Civil. El precepto contenido en el artículo 665 según el cual los derechos a la sucesión de una persona se transmiten desde el momento de su muerte, no obsta a que esos derechos se transmitan a los herederos con las cargas que los afectan y con las condiciones impuestas por el testador, siempre que no perjudiquen la legítima de los herederos forzosos.

La facultad de vender otorgada a un albacea no perjudica por sí la legítima de los herederos forzosos.

Ciertamente que la parte demandante alegó en la demanda que la suma pagada a los demandados no era debida, que la adjudicación fué obtenida mediante presentación de un docu mento falso que jamás fué suscrito ni otorgado por el difunto Miguel Criado y Blas, y que las fincas adjudicadas en pago valían en 6 de abril de 1905, fecha de la adjudicación, por lo menos $10,000; pero en el escrito de exposición del caso se hizo constar que la demandante acepta la conclusión a que llegó la corte de Ponce en lo que respecta a la autenticidad del documento que sirvió de base para la adjudicación, y por tal razón ambas partes acordaron omitir en dicha exposición la prueba presentada por demandante y demandado sobre aquel extremo incluyendo única y sustancialmente la aportada so-

bre la falta de facultad del albacea Pedro José Alvarado para adjudicar bienes de la sucesión demandante en pago de deudas; siendo menores de edad los miembros de la sucesión, sin tener el debido permiso de la corte de distrito correspondiente; y en su alegato escrito, como dijimos al principio, la parte apelante limita la cuestión legal materia del recurso a considerar y resolver si la escritura de adjudicación de 6 de abril de 1905 es nula por la sola razón de no haber intervenido en ella los herederos menores de edad de Miguel Criado y Blas y dejádose de cumplir los requisitos prevenidos por la ley para la enajenación de bienes inmuebles de menores, siendo por tanto ajena al judicial debate cualquier otra cuestión que pudiera derivarse de las alegaciones de la demanda.

La adjudicación se hizo para el pago de una deuda legítima y debida por Miguel Criado y Blas, o sea, para cubrir una atención de su testamentaría, y estando facultado expresamente el albacea para vender con ese fin bienes del testador, la adjudicación fué legal, válida y eficaz en derecho por haberla llevado a cabo el albacea Pedro José Alvarado y Rivera dentro de los poderes que para ello le confirió el testador en la cláusula 12ª. del testamento.

En el caso de *Martínez v. El Registrador de la Propiedad de Caguas,* 15 D. P. R. 70, resuelto gubernativamente por esta corte en 8 de febrero de 1909, vino en apelación a esta Corte Suprema una nota del mencionado registrador que denegaba la inscripción de la escritura de 6 de abril de 1905, la misma actualmente impugnada de nulidad, porque ''Don Pedro José Alvarado, en su carácter de albacea particular nombrado por el testador Don Miguel Criado Blas, había enajenado las fincas a Don Angel Martínez y Caballero y Don Manuel Martínez y Caballero en pago de deudas en la testamentaría del causante Sr. Criado, sin que concurrieran en el acto del otorgamiento los herederos del mismo a prestar su consentimiento;'' y dicha nota fué revocada ordenándose la inscripción denegada porque las deudas contraídas por el testador deben pagarse

siempre antes de reconocerse como existente la herencia, y porque no discutiéndose ni negándose por el Registrador de la Propiedad de Caguas la existencia de la deuda ni que las fincas adjudicadas en pago hubieran pasado a la propiedad de los verdaderos acreedores que otorgan carta de pago por saldo de la deuda en cuestión, *la enajenación así realizada sin la concurrencia de los herederos forzosos no contraría ningún precepto legal prohibitivo* y por consiguiente la escritura presentada al registro en tales condiciones debía inscribirse.

Aunque esa resolución, como pronunciada en un recurso gubernativo sin las formalidades de un juicio, no constituye cosa juzgada sobre la cuestión que hoy se debate, no encontramos razón legal bastante para desautorizarla y por tanto sostenemos la misma doctrina en ella consignada, reforzada por las razones que dejamos expuestas.

También invoca la parte apelante en apoyo del recurso, como decisiva del caso, la jurisprudencia establecida por la Corte Suprema de los Estados Unidos en el caso de *Longpré* v. *Díaz*, 237 U. S. 512. En ese caso la adjudicación no fué hecha por un albacea facultado para vender, y por tanto la enajenación estaba sujeta a los requisitos y formalidades que la ley previene para la venta de los bienes de menores, cuando se haga por los padres o por el tutor.

Sostiene finalmente la parte apelante que la ley aplicable al caso es la de Procedimientos Legales Especiales, aprobada en marzo 9 de 1905, por haberse otorgado la escritura de adjudicación en abril siguiente, e invoca para sostener la nulidad de la dicha escritura el artículo 25 de dicha ley, que dice así:

"Artículo 25.—Cuando todos o algunos de los herederos estén ausentes y no tengan representante legítimo en la jurisdicción del último domicilio de la persona finada, o lugar donde radiquen sus bienes, o cuando un heredero o legatario sea menor o esté incapacitado, será necesaria la administración judicial de los bienes del testador."

Sin que entremos a considerar si en un caso como el presente en que el testador prohibió para el arreglo de su testamentaría toda intervención judicial que no fuera estrictamente indispensable es o no aplicable dicho artículo, opinamos que aun en el supuesto afirmativo, ese artículo no deroga los preceptos de la sección 11ª., Capítulo II, Título III, Libro III, del Código Civil, que lleva por epígrafe ''De los albaceas o testamentarios,'' máxime previniendo el artículo 49 de la expresada ley que ''se cumplirá todo lo que hubiere dispuesto el testador sobre la administración de su caudal hasta entregarlo a sus herederos,'' y en el presente caso entre las disposiciones del testador figura la facultad concedida a los albaceas de vender bienes si necesario fuere para atenciones de su testamentaría.

Habiendo llegado a la conclusión de que el albacea autorizado en términos absolutos para vender bienes del testador puede hacerlo sin la intervención de los herederos, sean éstos necesarios o voluntarios, mayores o menores de edad, surge como consecuencia lógica la de que cuando hay menores de edad, como en el presente caso, no es necesario que se llenen los requisitos y formalidades que la ley previene para cuando se vendan bienes inmuebles de menores por sus padres o tutores. Quien vende es el albacea como mandatario del testador y no en representación de los menores.

Careciendo como carece de acción la parte demandante, huelga discutir la excepción de prescripción alegada por la parte demandada.

Por las razones expuestas es de confirmarse la sentencia apelada.