LUIS VILELLA Y VÉLEZ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

No. 676.—*Sometido:* Marzo 14, 1927. *Resuelto:* Mayo 23, 1927.

1. ALBACEAS Y ADMINISTRADORES—COBRO Y ADMINISTRACIÓN DE LA PROPIEDAD—PROPIEDAD REAL, DERECHOS EN LA MISMA—VENTA—FACULTAD DEL ALBACEA PARA VENDER—CONCURRENCIA O INTERVENCIÓN DE LOS HEREDEROS.—Conferida a un albacea facultades extraordinarias, incluyendo la de vender inmuebles, la concurrencia o intervención de los herederos en la venta de un inmueble hecha por el albacea no es necesaria, cuando los herederos son voluntarios.

2. ALBACEAS Y ADMINISTRADORES—ADMINISTRACIÓN EN GENERAL—CUÁNDO ES NECESARIA.—Facultado un albacea para enajenar bienes sin limitación alguna, el hecho de que en dichos bienes estén interesados menores y legatarios ausentes no hace necesaria la administración judicial de los mismos ni la intervención judicial para la venta de inmuebles, cuando se trata de herederos que son voluntarios y tal intervención está prohibida expresamente por el testador.

3. ALBACEAS Y ADMINISTRADORES—COBRO Y ADMINISTRACIÓN DE LA PROPIEDAD—PROPIEDAD REAL Y DERECHOS EN LA MISMA—VENTA—INSCRIPCIÓN—VENTA OTORGADA POR ALBACEA CON FACULTAD EXTRAORDINARIA DE VENDER—NECESIDAD DE LA INSCRIPCIÓN PREVIA A FAVOR DE LOS HEREDEROS.—Otorgada una venta de un inmueble por un albacea a quien el testador le confiriera, sin limitación alguna, la facultad extraordinaria de vender inmuebles, la finca vendida pasa del dominio del testador—por mediación del albacea—al del adquiriente sin necesidad de que se efectúe la inscripción previa a nombre de los herederos.

4. TESTAMENTOS—"PROBATE", ACCIÓN PARA ESTABLECERLOS Y ANULACIÓN—*Probate* Y REGISTROS DE TESTAMENTOS EXTRANJEROS—EN GENERAL.—Otorgado un testamento abierto en el extranjero los tribunales de Puerto Rico no necesitan resolver sobre la validez y autenticidad del mismo para que pueda pasar el título a bienes aquí radicados, y menos aún cuando su autenticidad se ha establecido mediante copia del original debidamente legalizada.

5. TESTAMENTOS—"PROBATE", ACCIÓN PARA ESTABLECERLOS Y ANULACIÓN—*Probate* Y REGISTRO DE TESTAMENTOS EXTRANJEROS—REGISTRO E INSPECCIÓN—DEFECTOS SUBSANABLES—REQUISITOS FORMALES Y SOLEMNIDADES.—Cuando el registrador consigna como un defecto subsanable el no haberse acreditado que en un testamento se llenaran los requisitos en cuanto a la forma y solemnidad del sitio en que se otorgó y no especifica las formas y solemnidades que él alega omitidas, falta base para considerar el defecto apuntado.

Nota de *Pedro Gómez Lasserre,* R. (Mayagüez), denegando inscripción de una venta otorgada por un albacea. *Revocada.*

*José Sabater,* abogado del recurrente; *El Registrador* recurrido compareció por escrito.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

Angel Rodríguez Balzana, en su carácter de albacea ejecutor del testamento otorgado por Dolores Nadal y Freyre, vendió a Luis Vilella y Vélez ciertas fincas rústicas, y presentada al registro la escritura para su inscripción, el registrador la denegó, fundándose en los motivos que podemos resumir así:

I. Porque debe hacerse la previa inscripción a nombre de los herederos instituídos en el testamento, según exige el artículo 20 de la Ley Hipotecaria.

II. Porque estando interesados en la herencia herederos y legatarios menores de edad, sin que consten que estén representados por su padre o madre, o por un tutor, así como existiendo también herederos y legatarios ausentes y establecimientos públicos con interés en la herencia, sin que conste que tengan sus representantes legítimos en esta jurisdicción, donde radican los bienes de la finada, es necesaria la administración judicial y la venta hecha por el albacea no puede inscribirse sin la intervención judicial, a tenor de lo que dispone la ley de procedimientos legales, y lo prescrito en el artículo 877 del Código Civil.

III. Porque no aparece que la herencia haya sido expresa o tácitamente aceptada o repudiada por los herederos de la finada. En el primer caso se requiere la previa inscripción a nombre de los herederos, y si lo segundo, habría que estarse a lo dispuesto en el inciso 3 del artículo 886, y el 887 del Código Civil.

IV. Porque es necesario resolver primeramente por los tribunales de esta jurisdicción la validez del testamento.

Además, el registrador consignó en su nota los siguientes defectos subsanables: (*a*) no justificarse que alguno de

los herederos premuriera ·a la testadora dejando herederos necesarios y que entre éstos no había menores de edad, y (*b*) no acreditarse que en el testamento se hayan llenado los requisitos en cuanto a la forma y solemnidades exigidas por las leyes españolas.

[1, 2] Dolores Nadal y Freyre otorgó testamento abierto en Madrid, España, en noviembre 17, 1924.   En él declara que fué casada en únicas nupcias con Rafael Gálvez y Echegaray, de cuyo matrimonio no tuvo sucesión, y que no teniendo ascendientes ni descendientes carece de herederos forzosos. La testadora hace varios legados de cantidad y específicos; luego instituye herederos en el remanente a diferentes personas que designa por sus nombres; prohibe la intervención judicial; nombra albacea y contador-partidor en primer lugar a Angel Rodríguez Balzana, y a quien entre otras facultades, le confiere las siguientes: ''la testadora le confiere, además, y sin perjuicio de las atribuciones generales que le correspondan con arreglo a las leyes, las más amplias facultades para que tan pronto como haya ocurrido el fallecimiento de la propia testadora, pueda apoderarse de todos los bienes que constituyan el caudal relicto y administrarlos libremente durante la proindivisión y hasta su entrega a los herederos y legatarios, recaudando sus rentas y productos; . . . vender o de otro modo enajenar, en la forma y condiciones que estime convenientes, toda clase de valores, bienes muebles e inmuebles y derechos de cualquiera naturaleza; . . .''

Los tres primeros motivos están íntimamente relacionados y serán examinados conjuntamente.

La cuestión fundamental en este recurso es la no concurrencia de los herederos en la venta hecha por el albacea y de si su intervención en la misma era o no necesaria.

Los siguientes artículos del Código Civil Revisado prescriben:

''Art. 875.—Los albaceas tendrán todas las facultades que ex-

presamente les haya conferido el testador, y no sean contrarias a las leyes.

"Art. 876.—No habiendo el testador determinado especialmente las facultades de los albaceas, tendrán las siguientes:

"1. Disponer y pagar los sufragios y el funeral del testador con arreglo a lo dispuesto por él en el testamento; y en su defecto, según la costumbre del pueblo.

"2. Satisfacer los legados que consistan en metálico, con el conocimiento y beneplácito del heredero.

"3. Vigilar sobre la ejecución de todo lo demás ordenado en el testamento, y sostener, siendo justo, su validez en juicio y fuera de él.

"4. Tomar las precauciones necesarias para la conservación y custodia de los bienes, con intervención de los herederos presentes.

"Art. 877.—Si no hubiere en la herencia dinero bastante para el pago de funerales y legados, y los herederos no lo aprontaren de lo suyo, promoverán los albaceas la venta de los bienes muebles; y no alcanzando éstos, la de los inmuebles, con intervención de los herederos.

"Si estuviere interesado en la herencia algún menor, ausente, corporación o establecimiento público, la venta de los bienes se hará con las formalidades prevenidas por las leyes para tales casos."

El registrador, sin duda, no ha considerado en su verdadero alcance el artículo 875, especialmente en relación con la institución de herederos voluntarios. Las facultades a que se refiere este artículo son las extraordinarias o especiales que el testador concede al albacea, aparte de las que legalmente le corresponden, especificadas por el artículo 876. Estas últimas tienen el carácter de ordinarias y pueden llamarse legales o normales y de suyo están limitadas. Parece que ésta es la dificultad del registrador, no distinguiendo una de otras. No estamos considerando, pues, las facultades legales de un albacea, sino las amplias y especiales conferidas por el testador y que no sean contrarias a las leyes.

En este caso la testadora confirió al albacea facultades extraordinarias, incluyendo entre ellas la enajenación de inmuebles. Hasta donde puede llegar esta autorización, ha

sido objeto de discusión por tratadistas y la jurisprudencia española cuando los interesados en la herencia son herederos forzosos. Esta Corte Suprema definió, sin embargo, la doctrina que debía seguirse tratándose de herederos forzosos en el caso. de *Sucesión Criado* v. *Martínez et al.*, 25 D. P.R. 334. Nada es necesario considerar, no obstante, en cuanto a éstos en este recurso. No parece que haya habido dificultad existiendo solamente herederos voluntarios. Galindo y Escosura (tomo 2, pág. 73), refiriéndose a esta última clase de herederos, se expresa así:

"¿Puede sostenerse que tal facultad es contraria a las leyes?

"Si sólo hay herederos voluntarios, desde luego que puede asegurarse que no, porque sólo lo son en virtud de la voluntad del testador, a la que en absoluto han de estar sometidos. (V. Resolución de 5 Nov. 1887 y 16 Sept. 1890)"

Comentando Manresa igual material dice lo siguiente:

"El testador, al facultar la venta de bienes, así como puede determinar su objeto, puede también fijar su forma a los requisitos con que ha de llevarse a efecto; puede exigir subasta pública o que intervengan los herederos, o que medien otras formalidades; mas si faculta en absoluto para enajenar todos los bienes o una parte de ellos, sin añadir limitación alguna, el albacea puede enajenar en la forma que crea más conveniente, sin que pueda exigirse la intervención de los herederos, ni el· requisito de la subasta, ni otra formalidad alguna, cuando éstos sean voluntarios." Manresa, Comentarios al Cód. Civ., vol. 6, pág. 767, 4ta. ed.

La teoría descansa en que tratándose de herederos voluntarios, todos los bienes del causante, siendo de libre disposición, puede disponerse de ellos con absoluta libertad, pues no es contrario a ningún precepto legal que el testador faculte al albacea para que pueda enajenar bienes en la forma que creyere más conveniente, sin que pueda exigirse la intervención de los herederos, ni menos que sea necesaria la intervención judicial, cuando está prohibida expresamente por el testador. La regla es que no quebrantándose ninguna disposición legal en las facultades que sin limitación

alguna se le conceden al albacea, es ley la voluntad del testador.

[3] El otro requisito que exige el registrador de la previa inscripción a nombre de los herederos, levanta la cuestión: a quién representa el albacea. Manresa también discute esta materia y dice:

"La resolución de 7 de Enero de 1875, a los efectos de la inscripción, sentó la doctrina de que el albacea universal representaba al testador, mas los albaceas particulares eran representantes de los herederos nombrados para auxiliar a éstos, por ser anómalo que represente el mandatario a una persona ya muerta, y ser peligroso permitirle obrar con independencia de los herederos.

"Esta teoría, defendida con argumentos de no escasa fuerza, se encuentra hoy completamente desacreditada. La mayoría de los escritores se han revuelto contra ella, y la jurisprudencia viene admitiendo la doctrina contraria, los albaceas en todo caso representan la personalidad del testador. Como ejemplo pueden citarse la sentencia de 4 de Julio de 1895 y la Resolución de 22 de Octubre de 1897." Manresa, Comentarios al Cód. Civ., vol. 6, pág. 771, 4ta. ed.

El autor luego sostiene que el albacea es al testador a quien realmente representa, siendo una prolongación ficticia de la vida del causante para ejecutar cuanto éste deseó que se ejecutare y que la pretendida necesidad de la previa inscripción de los bienes no puede alterar la verdad de tales afirmaciones. Se refiere entonces a autores que admiten cierta contradicción entre lo que el Código dispone en el artículo 901 del Código antiguo, equivalente al 875 del Código Civil Revisado, y lo que exige el artículo 20 de la Ley Hipotecaria. Pero dice que si la contradicción existe, no está en los preceptos de las leyes respectivas, sino en la doctrina sentada por la Dirección General de los Registros. Se citan a continuación varias resoluciones de aquel organismo, y concluye diciendo:

"Nace esto de interpretar el art. 20 de la Ley Hipotecaria con un criterio estrecho y poco racional, y querer armonizar bajo esta falsa base preceptos que se juzgan contradictorios.

"Lo que el expresado art. 20 quiere es: que conste en el Registro

la historia completa de cada finca o derecho; que esa historia no resulte interrumpida; que sólo ejecute actos de dueño el que como dueño aparezca en el Registro o la persona que ostente la legítima representación de ese dueño; y por eso exige que el que vende, el que hipoteca, el que constituye cualquier derecho real o lo transmite, tenga inscrito previamente su derecho en el Registro. De otro modo sería imposible apreciar cuándo había o no derecho para transmitir. El Registrador y los terceros, para saber quién es el dueño, necesitan un guía seguro, y ese guía es la inscripción, los datos del Registro.

"Pero de aquí no se deduce que, facultado el albacea por el testador para enajenar, sea *necesario* inscribir los bienes a nombre de los herederos, extraños al acto, ni a nombre de los albaceas, que no adquieren sobre esos bienes el dominio ni derecho real alguno.

"El testador es el dueño, y sólo a su nombre ha de figurar la inscripción previa. Al testar y conceder al albacea facultad para arrendar, para hipotecar, para vender, para adjudicar en pago de deudas, para cancelar ciertas fincas o ciertos derechos, o cuantos le correspondan, no se desprende de derecho real alguno en favor de ese albacea, le autoriza sólo para que en su nombre realice ese desprendimiento, y así la finca o el derecho que se transmiten, pasan directamente del dominio del testador al del adquirente, no siendo el albacea más que un instrumento, un intermediario, un simple ejecutor de la voluntad del causante. . . .

       \*       \*       \*       \*       \*       \*       \*

"Lo expuesto hace relación al art. 901. En el caso del artículo 903, la cuestión es distinta, porque el dueño no autorizó para enajenar ni la ley da esa facultad al albacea. Este promueve la venta, interviene en ella, puesto que así se desprende del artículo; pero venden los herederos, y es natural que se exija la inscripción a favor de éstos." Manresa, *id.*, págs. 773, 774 y 775.

A la luz de esta doctrina, toda duda debe disiparse en cuanto a la no necesidad de la inscripción previa que requiere el registrador.

[4] Por el cuarto motivo parece sostenerse que los tribunales de Puerto Rico deben intervenir para determinar la validez y autenticidad del testamento por haber sido otorgado por la testadora en país extranjero. De acuerdo con el artículo 11 del Código Civil disponiendo que las formas

y solemnidades de los testamentos se rigen por las leyes del país en que se otorguen, no es necesaria dicha intervención judicial para establecer su validez. No es innecesario decir además que en este caso las formas y solemnidades que aparecen del testamento son las mismas que se exigen por el Código Civil en Puerto Rico. Lo importante era establecer la autenticidad del testamento y esto aparece cumplido mediante la copia del original, debidamente legalizada según exige el artículo 69 de la Ley de Evidencia, inciso 8.

[5] En cuanto a los defectos señalados en la nota, el primero carece de fundamento por quedar demostrado que no fué necesaria la concurrencia de los herederos para la validez de la venta, y en el segundo, no especificándose las formas y solemnidades que el registrador alega haberse omitido, falta la base para considerarlo.

Por los motivos expuestos, *debe revocarse la nota recurrida y ordenarse la inscripción solicitada.*