THE ROYAL BANK OF CANADA, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD, SECCIÓN VII DE SAN JUAN, recurrido.

Número: O-76-379    Resuelto: 3 de diciembre de 1976

*Brown, Newson & Córdova,* abogados del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Río Grande Ready Mix, Inc., autorizó la constitución de hipoteca sobre una finca para garantizar cuatro pagarés al portador por la suma de $100,000 cada uno. El recurrente es tenedor en calidad de acreedor pignoraticio de estos pagarés. Copia certificada de la hipoteca se presentó el 9 de octubre de 1974 en el Registro, acompañándose como documento complementario la resolución corporativa para hacer constar la autorización dada por la Junta de Directores de Río Grande Ready Mix, Inc., a su presidente, señor Antonio Rohena, para constituir el gravamen. La secretaria de Río Grande Ready Mix, Inc., certificó en dicho documento complementario la emisión de la resolución. El documento no se legalizó ante notario.

El 30 de enero de 1976 el Registrador denegó la inscripción de la hipoteca por razón de que la resolución corporativa acreditando el carácter y facultades con que comparecía el Sr. Rohena a representar a la corporación deudora no estaba debidamente jurada y suscrita ante notario. El Registrador extendió en consecuencia al margen del asiento de presentación anotación preventiva por ciento veinte días. No se hizo constar al margen de dicho asiento, ni en el asiento mismo, la notificación de la denegatoria al presentante o al interesado en la operación registral.

El 25 de agosto de 1976 el recurrente se dio por notificado de la denegación al recoger la copia certificada del documento. Adjuntos a él halló copia de dos comunicaciones de 4 de diciembre de 1975 y 13 de febrero de 1976, dirigidas por el Registrador al notario fedante, en que se hacía referencia

al defecto mencionado y a la denegatoria de inscripción. Tales notificaciones no están firmadas por el notario. Cinco días después se interpuso el recurso presente. Al mismo tiempo se radicó una resolución corporativa, suscrita ante notario, en que Río Grande Ready Mix, Inc., ratifica la actuación de su Presidente al otorgar la escritura de hipoteca objeto de este recurso. Por haberse inscrito el 20 de enero de 1976 una segunda hipoteca sobre la misma finca, que adquiría rango preferente en caso de denegarse el recurso, la referida ratificación no convierte el recurso en académico.

■ La primera cuestión que estos hechos plantean es si este Tribunal goza de jurisdicción en el caso. El término que para radicar un recurso gubernativo disponen los Arts. 2 y 3 de la Ley de 1 de marzo de 1902, 30 L.P.R.A. secs. 1772 y 1773, comienza a correr al notificarse la denegatoria de inscripción. *Rodríguez* v. *Registrador*, 62 D.P.R. 396, 398–399 (1943); *Monserrate* v. *Registrador*, 31 D.P.R. 640 (1923). El término es jurisdiccional. *Rodríguez Juliá* v. *Registrador*, 99 D.P.R. 275 (1970).

Diversas disposiciones de ley establecen los requisitos de una notificación válida. El Art. 1º de la Ley de 1 de marzo de 1902, 30 L.P.R.A. sec. 1, ordena:

"Cuando el registrador deniegue o suspenda alguna inscripción, anotación o cancelación, expondrá al pie del documento, clara y concisamente, los motivos legales de su negativa y de ella notificará al interesado, quien firmará la notificación."

El Art. 19 de la Ley Hipotecaria, 30 L.P.R.A. sec. 44, requiere, además, que "la notificación al presentante del documento o al interesado en la operación registral o al notario se hará constar al margen del asiento de presentación. . . ."

■ En este caso se incumplieron ambas disposiciones. No se firmó por el interesado la alegada notificación de la denegatoria, fechada el 13 de febrero de 1976, adherida a la co-

pia certificada de la escritura. No se hizo constar tampoco al margen del asiento de presentación el hecho de la notificación hasta el 25 de agosto de 1976. ¿Qué efecto surten estos incumplimientos?

En España no es necesario consignar en sitio alguno el hecho de la notificación y ésta, conforme a varios comentaristas, aun puede ser verbal, excepto cuando se pide que se le consigne por escrito. Roca Sastre, *Derecho Hipotecario*, Tomo II, 6ª ed., 1958, págs. 270–271; Galindo y Escosura, *Comentarios a la Legislación Hipotecaria de España*, Tomo II, 4ª ed., 1903, págs. 141–142; Sanz Fernández, *Instituciones de Derecho Hipotecario*, Tomo II, Reus, Madrid, 1953, pág. 183; *cf.* Morell y Terry, *Comentarios a la Legislación Hipotecaria*, Tomo II, 2ª ed., 1927, pág. 389. En Puerto Rico fue por la Ley Núm. 20 de 7 de julio de 1923 que por primera vez se enmendó el Art. 19 de la Ley Hipotecaria para requerir que la notificación se haga constar al margen del asiento de presentación.

▮ Si bien se desconoce el historial legislativo de la enmienda de 1923, es razonable concluir que su propósito básico fue fortalecer el principio registral de publicidad. La versión enmendada del Art. 19 le permite a un tercero saber con exactitud si se ha consentido o no a la suspensión o denegatoria de una inscripción. El simple cotejo del margen del asiento de presentación le revela si tuvo lugar la notificación correspondiente. Ya nos hemos pronunciado antes al efecto de que la Ley Hipotecaria debe interpretarse de modo que facilite y proteja el tráfico comercial. *Srio. de Hacienda* v. *Tribunal Superior*, 95 D.P.R. 436, 443 (1967); *Arroyo* v. *Registrador*, 86 D.P.R. 362, 374 (1962); *Roca* v. *Banco Territorial y Agrícola*, 6 D.P.R. 164, 169 (1904). En *North American Mortgage etc.* v. *Registrador*, 104 D.P.R. 598 (1976), atentos a dicho principio resolvimos que, faltando notificación, al traerse al Registro los complementarios, no había empezado a correr el término dispuesto en el Art. 19 de

la Ley Hipotecaria. No existiendo constancia fehaciente de la notificación que requiere la Ley de 1º de marzo de 1902 ni habiéndose hecho constar el hecho de dicha notificación al margen del asiento de presentación, según lo exige el Art. 19 de la Ley Hipotecaria, el término para la radicación de este recurso gubernativo no comenzó a correr hasta el 25 de agosto de 1976 y goza de jurisdicción por tanto este Tribunal para entender en el mismo.

Respecto al problema sustantivo de si deben legitimarse ante notario las certificaciones expedidas por funcionarios de una corporación para acreditar que los otorgantes se hallan autorizados en nombre de la misma para llevar a efecto el acto o contrato de que se trate, existe conflicto en las autoridades.

En la Resolución de 21 de diciembre de 1887 de la Dirección General de los Registros y del Notariado de España se expresa que "de los acuerdos que toma el Consejo de Administración de una Sociedad sólo puede certificar su Secretario, dando plena autenticidad al certificado el V.ºB.º del Presidente o Gobernador de la misma; y esto así, no sólo porque en los Estatutos, que son ley para la Sociedad, se declara tal atribución propia y privativa del Secretario, sino, además, porque de otra suerte sería preciso que los acuerdos del Consejo de Administración de la Compañía se hicieran constar en acta notarial, y esto no ha sido prescrito por ninguna disposición legal. . . ." Roca Sastre y Molina Juyol, *Jurisprudencia Registral*, Tomo II, 1953, pág. 404. Fundado en esta Resolución, Morell y Terry se inclina a pensar que no es preciso que las certificaciones de referencia se expidan por quien ejerza autoridad o cargo público. Morell y Terry, *Comentarios a la Legislación Hipotecaria*, 2ª ed., Tomo I, 1925, pág. 649.

Roca Sastre adopta la posición diametralmente opuesta, incluyendo entre los documentos privados complementarios "Las certificaciones de nombramientos de cargos de adminis-

tradores, de hallarse los nombrados en el ejercicio de los mismos, o de los acuerdos de sus organismos en materia de Sociedades mercantiles o de otras personas jurídicas que no tengan carácter público, expedidas por quienes estatutariamente corresponda certificar, cuyas certificaciones normalmente están firmadas por el Secretario de tales entidades, con el visto-bueno de su Presidente, cuyas firmas deben estar legitimadas, a no ser que el Notario autorizante de la escritura o acta correspondiente asevere que conoce y considera legítimas tales firmas." Roca Sastre, *Derecho Hipotecario*, 6ª ed., Tomo II, 1968, pág. 588. La Resolución de 7 de febrero de 1902 sostiene el criterio de Roca Sastre. Se afirma en ella que "si bien no hay precepto alguno que establezca que los documentos expedidos por el Banco de España que hayan de surtir efecto fuera de la demarcación de la Audiencia Territorial de Madrid deban legalizarse, parece natural que se legalicen, puesto que de algún modo se ha de garantizar su autenticidad; y en este supuesto es evidente que las firmas que suscriben la carta de autorización y los demás documentos que justifican la personalidad del expresado Director deben legitimarse, conforme a lo dispuesto en los artículos 91 y anteriores del Reglamento del Notariado." Roca Sastre y Molina Juyol, *Jurisprudencia Registral*, Tomo III, 1953, pág. 896.

La legitimación de firmas a que se refieren Roca Sastre y la Resolución de 7 de febrero de 1902 envuelve la función autenticadora del notario. Castán específicamente incluye entre los actos que exigen instrumentación notarial, no sólo para facilitar la demostración del acto o negocio, sino también para dar a éste una forma que ha de ser base de su eficacia, la autorización de actas de juntas de sociedades de capital. Castán Tobeñas, *Función Notarial y Elaboración Notarial del Derecho*, Ed. Reus, Madrid, 1946, pág. 55. Al mismo efecto: Sanahua y Soler, *Tratado de Derecho Notarial*, Tomo II, 1945, pág. 133 y ss., Tomo I, 1945, pág. 43 y ss.

Los documentos complementarios no tienen que ser públicos. Del hecho que no tengan que ser públicos no se desprende, sin embargo, que pueda en todo caso prescindirse de todas las solemnidades que se les exigen a éstos. La legitimación de las firmas en determinados documentos complementarios puede requerirse sin que se les convierta en públicos. El propio Reglamento Hipotecario Español de 14 de febrero de 1947 reconoce que hay documentos complementarios notariales y documentos complementarios no notariales.(¹) Art. 51, ordinal 10. Casero Fernández, *Leyes Hipotecarias y Legislación Complementaria*, Aguilar, Madrid, 1969, pág. 513. Véanse también los Arts. 166(11) y 193(4) de dicho Reglamento. Nuestro actual Reglamento, que data del 14 de julio de 1893, también distingue entre ambos tipos de documentos complementarios. Véase, por ejemplo, el Art. 126(13), 30 L.P.R.A. sec. 1006(13).

■ Adoptamos en esta jurisdicción el criterio reflejado por Castán, Roca Sastre y por la Dirección General de los Registros en su Resolución de 4 de enero de 1902. Consideramos que dicha posición facilita la seguridad en el tráfico mercantil y fomenta el principio de la legitimidad registral. Como ha señalado Castán, la participación del notario inviste los actos en que interviene de una presunción de veracidad que los hace aptos para imponerse por sí mismos en las relaciones jurídicas y para ser impuestos, por su propia virtualidad, por el poder coactivo del Estado. *Op. cit.*, pág. 54. Resolvemos en consecuencia que deben legalizarse las firmas en las certificaciones expedidas por los funcionarios apropiados de una corporación para acreditar su autoridad como otorgantes de una escritura.

Ello no se hizo originalmente en este caso, pero se subsanó el defecto ya que, según hemos indicado, la recurrente

---

(¹) Ejemplos de documentos complementarios no notariales lo son las certificaciones de los diversos registros públicos y los dictámenes de los tribunales de justicia. Véase: Roca Sastre, *op. cit.*, 6ª ed., Tomo II, 1968, pág. 587.

radicó a tiempo, a los cinco días de la notificación legal de la anotación preventiva, la resolución notarizada que el Registrador le exigió correctamente. Por razón de lo cual *se instruye al Registrador a inscribir la escritura de hipoteca objeto del presente recurso, con la prioridad que corresponda a su asiento de presentación.*

