ROBERTO SCHMIDT MONGE, demandante, *v.* EULALIO A. TORRES, ADMINISTRADOR DE LOS TRIBUNALES, HON. CARLOS ROMERO BARCELÓ, GOBERNADOR DE PUERTO RICO, demandados; EULALIO A. TORRES, ADMINISTRADOR DE LOS TRIBUNALES, peticionario, *v.* HON. TRIBUNAL SUPERIOR, SALA DE SAN JUAN, recurrido.

*Número:* MC-84-21          *Resuelto:* 14 de mayo de 1984

*René Santiago Vega,* abogado del peticionario.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

Ante el Tribunal Superior, Sala de San Juan, está pendiente([1]) el caso Civil Núm. 83-6549 (902), *Roberto Schmidt Monge v. Hon. Carlos Romero Barceló, Eulalio A. Torres y otros.* Versa sobre la constitucionalidad de la Ley Núm. 85 de 28 de junio de 1978 (16 L.P.R.A. sec. 3017a) y el reclamo del allí promovente Schmidt Monge de que tiene derecho a permanecer en la posición de Juez Superior hasta que su sustituto sea nombrado y confirmado. Durante el trámite de esa causa continuó ejerciendo las prerrogativas del cargo.

Así las cosas, el 1 de mayo de 1984 el Gobernador de Puerto Rico, Hon. Carlos Romero Barceló, le extendió un tercer nombramiento de receso. Al otro día, el Lic. Eulalio A. Torres, Director Administrativo de los Tribunales, rechazó ese documento y el juramento por inválidos e insuficientes. Decidió separarlo de la nómina de la Rama Judicial, efectivo el 30 de abril, y ordenó la liquidación de sus vacaciones por enfermedad.

Notificado ese mismo día (2 de mayo) Schmidt Monge pidió dentro del pleito principal sobre sentencia declaratoria, en auxilio de jurisdicción y como remedio provisional, que se dictara una orden contra el licenciado Torres para

---

([1]) El magistrado Hon. Abner Limbardo, en el escolio 3 de su resolución, consigna que el 12 de abril quedaron sometidas unas mociones de sentencia sumaria de ambas partes, las cuales "se encuentran bajo la consideración y estudio de esta sala; esperamos emitir la disposición final correspondiente dentro del más breve plazo, atendida la urgencia y naturaleza de las cuestiones planteadas".

que se abstuviera de poner en vigor su determinación. El Juez Limardo señaló una vista para el 9 de mayo.

Sin embargo, el 7 de mayo Schmidt Monge presentó ante la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico una demanda (Civil Núm. 84-1191) (HL) bajo las leyes federales —28 U.S.C. sec. 1343; 42 U.S.C. secs. 1981 y 1983— e invocó la primera, quinta y decimocuarta enmienda de la Constitución Federal, para cuestionar las acciones del licenciado Torres y solicitar compensación por daños. Pidió el mismo remedio provisional que estaba pendiente para ser discutido en el Tribunal Superior.

Como consecuencia y luego de la vista del 9 de mayo, el Tribunal Superior, *sua sponte*, se negó a proveer sobre dicho remedio provisional, fundado en que cualquier dictamen suyo sería de carácter "consultivo" por haber retenido el 8 de mayo, el foro federal, jurisdicción para evaluar el mismo remedio que estaba ante su consideración. En consecuencia desestimó la solicitud de remedio provisional.

No conforme, el Director Administrativo licenciado Torres presentó ante este Tribunal Moción en Auxilio de Jurisdicción en la que —luego de un recuento de los hechos— solicitó que se elevaran los autos originales, resolviéramos las cuestiones de derecho pendientes en instancia [2] "o en su defecto deje sin efecto la Orden emitida por el Tribunal de

_____

[2] En su escrito expone: "Las siguientes interrogantes, entre otras, están planteadas ante el Tribunal de Instancia: ¿Tienen facultad los poderes Legislativo y Ejecutivo para aprobar legislación ignorando el Canon VIII de Ética Judicial? ¿Tal actuación, invade indebidamente el poder inherente del Tribunal Supremo de aprobar las reglas de conducta de los jueces del Estado Libre Asociado? Ante una actuación concertada entre el Legislativo y el Ejecutivo que erosione la integridad e independencia (separación de poderes) de la Rama Judicial, ¿tiene facultad en ley el Director Administrativo de los Tribunales para impedir tal actuación? De no tener tal facultad, ¿en quién recae dicha responsabilidad? ¿Puede el señor Gobernador retirar unilateralmente un nombramiento de un juez sometido a la consideración del Senado de Puerto Rico? ¿Cuál es el efecto jurídico de un informe del Senado rechazando [*sic*] expresamente un nombramiento que le fuera sometido, posteriormente retirado en forma unilateral, *mientras el incumbente continúa ocupando el cargo*? ¿Puede el señor Gobernador someter un nombramiento de receso, abstenerse de someterlo a la consideración del Senado, y al finalizar la sesión ordinaria extender *otro* nombramiento de receso?"

Instancia el 9 de mayo de 1984, mandatando [*sic*] a dicho Tribunal a entender y adjudicar la controversia ante sí, o emita cualquier otro pronunciamiento con arreglo a derecho".

█ Aceptamos este recurso como un *certiorari* para examinar la negativa del foro de instancia de resolver el incidente interlocutorio y proveer un remedio limitado. En nuestro sistema, en toda etapa jurisdiccional, prevalece el principio justiciero de que "[c]ualquier defecto en la denominación del pleito o en la súplica del remedio, no será óbice para que el tribunal conceda el remedio que proceda de acuerdo con las alegaciones y la prueba". Regla 70 de Procedimiento Civil; *Correa Negrón* v. *Pueblo,* 104 D.P.R. 286, 293 (1975).

En cuanto a que nos adentremos en todas las variadas interrogantes, declinamos lo que implicaría ejercer más allá de lo necesario y a destiempo nuestra jurisdicción apelativa.

## II

█ No podemos aceptar la premisa subyacente en que descansa la abstención del Tribunal Superior. La conclusión de que su dictamen sería de índole consultiva no es correcta, pues a posteriori dicha Corte de Distrito federal tendría jurisdicción para intervenir y decretar el remedio simultáneamente solicitado en ambos organismos por Schmidt Monge. La naturaleza de las controversias —integración de la dinámica y poderes bajo la Constitución del Estado Libre Asociado de Puerto Rico— el carácter del remedio reclamado, la calidad de funcionario judicial de Schmidt Monge nacida e invocada bajo esa constitución, las avenidas procesales que ha seguido, el no haber agotado las mismas, y demás factores, ponen en entredicho una determinación tajante al respecto. Lo menos que podemos sostener es que la jurisdicción federal es dudosa. El ejercicio erróneo de tal jurisdicción no la confiere. *P.S.P.* v. *Com. Estatal de Elecciones,* 110 D.P.R. 538 (1980).

Resolvemos que erró el Tribunal Superior al desestimar la petición de remedio provisional de Schmidt Monge. Debió adjudicarla. Ante esa omisión lo hacemos.

### III

Notamos que la medida adoptada por el Administrador de los Tribunales licenciado Torres —de negarse a admitir las credenciales de Schmidt Monge— está intrínsecamente atada y predicada en una interpretación de sustancialmente los mismos planteamientos, que por vía de sentencia declaratoria, están sub júdice ante el Tribunal Superior. Su posición de que finalizada la pasada Sesión Ordinaria de la Asamblea Legislativa el 30 de abril de 1984, Schmidt Monge cesó automáticamente en su cargo, y que el Gobernador Honorable Romero Barceló no podía extenderle otro nombramiento de receso, es simplemente un incidente nuevo, de igual naturaleza, a ser también adjudicado en su oportunidad por esa sala.

Esa circunstancia, unida a la validez presuntiva que acompaña al documento público[3] que es toda credencial de nombramiento de receso del Primer Ejecutivo —*Santa Aponte* v. *Srio. del Senado*, 105 D.P.R. 750, 766 (1977)— y al examen de los factores que deben ponderarse cuando se va a suspender a una persona de un puesto (o su equivalente), *Vélez Ramírez* v. *Romero Barceló*, 112 D.P.R. 716, 731-738 (1982), favorecen al licenciado Schmidt Monge en la búsqueda de su remedio provisional.

Decidimos que hasta tanto no se resuelvan con carácter final y firme por los tribunales del Estado Libre Asociado los méritos de las controversias planteadas en la sentencia

---

[3] La interacción de la Regla 56.3 de Procedimiento Civil —que prescinde de la prestación de fianza cuando la obligación reclamada surge de un documento público— y la Regla 79 de Evidencia sobre autenticación prima facie aplican a este caso. ". . . En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial." Regla 56.1, *in fine*, de Proc. Civil.

declaratoria (Civil Núm. 83-6549 (902)), *inclusive* la validez o no del nuevo nombramiento de receso extendídole por el Primer Ejecutivo el 1 de mayo de 1984, el Lic. Roberto Schmidt Monge debe continuar en el desempeño del cargo de Juez Superior.

En virtud de la Regla 50 del Reglamento de este Tribunal, *se expedirá auto de certiorari y se dictará sentencia que deje sin efecto la resolución recurrida y la determinación administrativa del Director Administrativo de los Tribunales, Lic. Eulalio A. Torres. En consecuencia, el Lic. Roberto Schmidt Monge continuará desempeñando las funciones del cargo de Juez Superior sujeto al resultado que por sentencia final y firme recaiga en el caso Civil Núm. 83-6549 (902). En adición, considerando que el Juez Schmidt Monge tiene pendiente un sinnúmero de casos sometidos para su resolución, se le releva de las funciones de Sala para que proceda a resolver esos asuntos.*

*Ante el Tribunal Superior, Sala de San Juan, continuarán los trámites de rigor compatibles con lo expuesto. Esta decisión en nada prejuzga dicho caso.*

El Juez Asociado Señor Torres Rigual emitió opinión disidente. El Juez Presidente Señor Trías Monge se inhibió. El Juez Asociado Señor Díaz Cruz no intervino.

—O—

Opinión disidente del Juez Asociado Señor Torres Rigual.

Es insólito que un tribunal se haya negado a proveer sobre un remedio provisional, como lo ha hecho el tribunal de instancia en este caso, no obstante tener jurisdicción sobre el asunto y de ser suya la obligación primaria de así hacerlo. Su negativa tiene el efecto de propiciar el uso indebido del foro federal para asuntos que ya fueron iniciados en nuestros tribunales. Las cuestiones planteadas en el tribunal de instancia han de resolverse bajo la Constitución y las leyes del Estado Libre Asociado, cuyo máximo intérprete es este Tribunal. La Corte Federal tiene el deber de respetar el

ejercicio de esa jurisdicción y las decisiones que se emitan al amparo de ellas.

El fundamento que aduce el tribunal de instancia a los efectos de que proveer sobre el remedio provisional solicitado constituiría una opinión consultiva, parece descansar erróneamente en *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, 112 D.P.R. 780 (1982); caso en el cual resolvimos que la adjudicación de la validez constitucional de un estatuto puertorriqueño bajo una cláusula de la Constitución del Estado Libre Asociado similar a la norteamericana, equivaldría a expresar una opinión consultiva. Pero es que esta decisión no es aplicable al caso de autos pues, por el contrario, la posible determinación de violación de derechos civiles fundamentales alegados por el honorable Schmidt Monge descansa exclusivamente en la interpretación de la ley puertorriqueña. El propio recurrido, Schmidt Monge, lo acepta así en su demanda en la Corte Federal:

> Either because plaintiff Roberto Schmidt Monge has a valid appointment since the year 1969 that has not become due, or either because he holds over the position of Superior Court Judge until his successor is appointed and takes possession of the position, and no successor to him has been appointed, said Roberto Schmidt Monge has a proprietary right to said position, and to the salary of the same, to which he has been deprived, without due process of law, by defendants Eulalio Torres and/or Edda Cordero, acting under color of state law.

Es decir, por un lado, los derechos alegados por el recurrido dependen de la interpretación que imparta este Tribunal a la enmienda a la Ley Electoral que prorroga el término de nombramiento del juez que ha sido nombrado miembro de la Junta Revisora Electoral, Ley Núm. 85 de 28 de junio de 1978 (16 L.P.R.A. sec. 3017a), véase a *Negrón Soto* v. *Gobernador*, 110 D.P.R. 664 (1981).(1) Y por otro, al derecho del recurrido bajo las disposiciones constitucionales

---

(1) Al interpretarse en *Negrón Soto* v. *Gobernador*, 110 D.P.R. 664, 678 (1981), una ley similar a la Ley Núm. 85 de 1978, el propio Juez Asociado Negrón García expresó que bien fuera "*directamente* mediante disposición de ley expresa, o *indi-*

bajo nombramiento de receso, Art. IV, Sec. 4. Véase *Hernández Agosto* v. *López Nieves*, 114 D.P.R. 601 (1983).(2)

Teniendo pues jurisdicción el Tribunal Superior para entender sobre la controversia en sus méritos, la tiene definitivamente para proteger la efectividad de su sentencia y los derechos de las partes mediante la concesión de un remedio provisional. La resolución de un juez federal de igual jerarquía que la del tribunal de instancia, según dictada en 9 de mayo de 1978 por el Hon. Juez Héctor A. Laffite, en nada menoscaba esa facultad y, por ende, no puede servir de justificación al tribunal de instancia para negarse a proveer.

El Tribunal se excede hoy al conceder un remedio provisional de singular factura que corresponde al tribunal de instancia proveer sobre sus méritos y que es de dudosa validez.

Me sorprende que la mayoría de este Tribunal cuestione hoy tan tímidamente la jurisdicción de la corte federal y conceda un remedio provisional cuando es evidente que las probabilidades del recurrido Schmidt Monge, prevalecer en los méritos, son ciertamente remotas. Véanse *Negrón Soto* v. *Gobernador*, supra, y *Hernández Agosto* v. *López Nieves*, supra.

Por las anteriores consideraciones, consigno mi inconformidad con la mayoría y disiento.

---

*rectamente,* por interpretación judicial, esta consecuencia [la de prorrogar el término de nombramiento del juez] precisamente está vedada por la prohibición constitucional precedentemente aludida". Se refiere al Art. VI, Sec. 10 de la Constitución del Estado Libre Asociado.

(2) La mayoría parece olvidar que hace apenas siete meses expresamos en *Hernández Agosto* v. *López Nieves*, 114 D.P.R. 601, 621-622 (1983), que la Constitución del Estado Libre Asociado representa "una llamada al consenso y no una invitación a que la Rama Ejecutiva o la Legislativa intente imponerle a la otra su criterio. . . . Ni los interinatos ni los nombramientos de receso pueden ser, sin embargo, razón para trastocar el fino balance de pesos y contrapesos que sostiene a nuestra estructura política. A ello se debe el plazo fijado para que las Ramas Legislativa y Ejecutiva puedan llegar a un acuerdo que satisfaga sus correspondientes prerrogativas constitucionales. *A partir de ese momento, el puesto quedará vacante, sin que pueda ser ocupado por persona que no cuente con nombramiento en propiedad*". (Citas omitidas y énfasis suplido.)