PINO DEVELOPMENT CORPORATION, recurrente, *v.* REGISTRADORA DE LA PROPIEDAD, SECCIÓN DE SAN GERMÁN, recurrida.

*Número:* RG-89-151 *Resuelto:* 19 de mayo de 1993

*Jaime Aponte Parsi,* abogado de la parte recurrente; *Reneé Negrón de Méndez,* Registradora de la Propiedad, recurrida.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

I

Mediante la Escritura Núm. 70 de 8 de diciembre de 1977, Filiberto Pérez, albacea testamentario de la Sucesión de Adalberto Pérez Toledo, compuesta por sus hijos Adalberto, Domingo Miguel, Fili, Adalberto, Elba Selenia, Aida Esther, y su madre Emilia Aponte Maysonet, vendió a Pino Development Corporation (Pino) una parcela de 464.33778 m.c., provenientes de la finca matriz Núm. 2,529, por el precio de $8,358.07. El 12 de febrero de 1981 el Registrador de la Propiedad (Registrador), Sección de San Germán, denegó su inscripción. El 25 de marzo de 1986 Pino suscribió y presentó una "Instancia" para aclarar el tracto sucesivo de la finca matriz y atemperarlo a la realidad.[1]

En la misma fecha de esa instancia, Pino, mediante la Escritura Núm. 8, cedió a la Autoridad de Acueductos y Alcantarillados la parcela objeto de la alegada segregación y compraventa. Sería dedicada al uso público según lo requerido por la Administración de Reglamentos y Permisos (A.R.Pe.).

Para comprender debidamente las controversias múltiples planteadas, a continuación citamos textualmente las faltas notificadas que impidieron la inscripción de los documentos presentados.

A. *Instancia:-*

"1. Porque la Instancia presentada tiene que solicitarse por los herederos de Adalberto Pérez Toledo acompañado del ins-

---

[1] El problema primordial de tracto tuvo su génesis en la premoriencia de ciertos herederos que creó una incongruencia entre el titular registral y el extraregistral.

trumento que motivó dicha inscripción 14 (Artículo 10 y 151 de la Ley Hipotecaria de 1979, según enmendada y el Artículo 141.4 del Reglamento Hipotecario de 1980).

2. Porque no se complementa [la instancia] con el documento de la sucesión hereditaria de Herminia Toledo Segarra y la planilla de contribución sobre dicha herencia (Artículo 64 y 95 de la Ley Hipotecaria de 1979, según enmendada).

3. Falta acreditar las facultades de Pino Development Corporation a favor de Juan Agustín Rivera, Affidavit Núm. 1444 del 11 de febrero de 1986 ante el Notario Público Jaime Aponte Parsi, porque éstas no resultan juradas. *Royal Bank of Canada v. Registrador*, 115 D.P.R. 416–421(sic)(²)".

B. *Compraventa:-*

"1. Falta la inscripción previa de la finca principal a favor del vendedor (Art. 87, Ley Hipotecaria) que es la número 2527 al folio 208, vuelto del tomo 384 de Cabo Rojo, que motivó la anotación B presentada a la 163 del diario 397.

2. Falta la inscripción previa de la segregación del lote de 464.3378 m.c (Artículo 85 y 87 A de la Ley Hipotecaria).

3. En la comparecencia de la escritura que motivó esta denegación se omiten los apellidos y circunstancias personales de los que comparecen representados por Filiberto Pérez (Artículo 15-D de la Ley Notarial; Artículo 64, Ley Hipotecaria; Artículo 80.2, Reglamento y 99.4 del Reglamento).

4. De la orden de fecha 16 de septiembre de 1977, Civil Número 74-12,275 del Tribunal Superior de Caguas no resultan como peticionarios los representados en la escritura de epígrafe por Filiberto Pérez de nombre Adalberto, Domingo Miguel, Fili, Adalberto, Elba Selenia [y Aida Esther]."(³)

---

(²) La cita correcta es 105 D.P.R. 414, 416 y 421 (1976).

(³) Como complemento a éstas se añadieron en la Notificación de Anotación Preventiva sobre Denegación de 16 de febrero de 1989:

"5. Tampoco se expresan sus apellidos ni sus circunstancias personales (art. 15(d) Ley Notarial, art. 64 Ley Hipotecaria y art. 80.2 y 99.4 del Reglamento).

"6. De la orden tampoco resulta que la misma es firme (Regla 65 .3 de Procedimiento Civil 1979).

"7. Falta acreditar con las facultades juradas de la Pino Development Corporation a favor de Alejandro Morales Gerena. La affidavit de 11 de febrero de 1986 ante Jaime Aponte Parsi, no está jurada. (Royal Bank v. Registrador [105] D.P.R. 416–421).

"8. Falta complementar con testamento y planilla de herencia de Adalberto Pérez Toledo el cual se otorgó mediante la escritura #9 del 24 de julio de 1979 ante el notario Juan G. Soto debidamente inscrita en el Reglamento de testamento del Tribunal Supremo de Puerto Rico." Notificación de anotación preventiva sobre denegación de 16 de febrero de 1989, pág. 2.

C. *Cesión*:-

"1. La falta de inscripción previa a favor del cedente, Pino Development Corporation.

2. Falta acreditar las facultades debidamente juradas de Juan Agustín Rivero para presentar a Pino Development Corporation (*Royal Bank of Canada v. Registrador*, 105 D.P.R. 414).

3. En la escritura se omite expresar el valor de la agrupación.

"4. En la escritura se omite señalar el número de seguro social de los otorgantes[, Pino Development y la Autoridad de Acueductos y Alcantarillados de Puerto Rico]".

## II

Las faltas 1 y 2 formuladas a la "Instancia" son de naturaleza similar: determinar si es suficiente para subsanar en el Registro de la Propiedad (Registro) la presencia de tracto sucesivo de la finca. Pino argumenta que la instancia no sólo corrige el tracto, sino que de la información plasmada en el Registro puede inferirse que Adalberto Pérez Toledo es el único y universal heredero.

Concurrimos con el Registrador en cuanto a la necesidad de requerir documentos complementarios, aunque no procede exigir que los solicitantes sean los herederos de Pérez Toledo. Veamos.

■ Nuestro derecho registral hace viable la rectificación de providencias registrales por medio de instancias; sin embargo, por regla general, éstas no producen asientos. Arts. 50.2 y 141.4 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (en adelante Reglamento General), 30 L.P.R.A. secs. 2003-50.2 y 2003-141.4, edición especial. A modo de paréntesis, es menester recordar que Pino, además de la instancia, desea lograr acceso al Registro de varias escrituras; en

---

Ninguna de estas faltas, enumeradas 5 a 8 de la "Compraventa", fueron discutidas por la recurrente Pino Development Corp. en el presente Recurso Gubernativo.

otras palabras, solicita la inscripción de derechos inmobiliarios, no una mera rectificación de un asiento registral.

El Art. 110(c) de la Ley Hipotecaria y del Registro de la Propiedad (en adelante Ley Hipotecaria), 30 L.P.R.A. sec. 2360(c), permite rectificar inexactitudes por defecto o error de algún asiento en el Registro. Su Art. 100 (30 L.P.R.A. sec. 2321) aclara el concepto "defecto" en los asientos registrales. Para corregir tales inexactitudes hay que tener a la vista el instrumento que motivó la acción, sin recurrir a una resolución judicial, siempre que no se afecten los derechos de titulares inscritos. Art. 151 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2502.

En este recurso, ambas partes están de acuerdo en que no se afectan derechos de terceros con la corrección. No obstante, para reanudar el tracto sucesivo, es imperativo declarar a Pérez Toledo único y universal heredero de Herminia Toledo Segarra. Arguyendo que esta conclusión pudiera derivarse de los documentos en el Registro, no sería posible tal inferencia, pues se ha creado un estado de derecho en el Registro y el Registrador carece de facultad para modificarlos prescindiendo de los trámites legales correspondientes. *Güibas v. Registrador*, 98 D.P.R. 573, 578 (1970); *Berlingeri v. Registrador*, 96 D.P.R. 706 (1968); *Esso Standard Oil Co. v. Registrador*, 88 D.P.R. 306 (1963); *Puffer v. Registrador*, 61 D.P.R. 40 (1942). En su función calificadora, tiene que atenerse al estado de derecho resultante del Registro. Por más poderosa y obvia que pueda ser la inferencia deseada, el Registrador no es juez ni tiene la potestad para declarar y determinar derechos dudosos o controvertidos. En *Banco de San Juan v. Registrador*, 103 D.P.R. 417, 422 (1975), incorporamos así la visión de Roca Sastre:

"El Registrador al calificar no puede fundarse en lo que *no conste* en los títulos presentados y en el contenido del Registro, de suerte que, salvo el *Derecho aplicable*, en funciones de calificación no existen para el Registrador sino [e]stos dos elemen-

tos, y ninguno más." Roca Sastre, *Derecho Hipotecario*, Tomo II, pág. 262, Sexta Ed. 1968. (Énfasis suplido.) Véase, además, *Nido & Cía. S. en C. v. Registrador*, 74 D.P.R. 789, 799 (1953).

 Las instancias han sido utilizadas como documentos complementarios para aclarar, no modificar, derechos.[4] La corrección deseada por Pino a través de la presentación de la instancia no sólo actualizaría la realidad registral con la extraregistral, sino un estado de derecho registral sin mediar título. No es posible.

 En *Figueroa Pesante v. Registrador*, 126 D.P.R. 209, 212–214 (1990), al glosar la naturaleza del documento complementario, dijimos:

El Art. 43 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2206, define "título" de la forma siguiente:
"Se entenderá por título, conforme a la sección anterior y para los efectos de la inscripción, el contenido del documento o documentos públicos en que funde inmediatamente su derecho la persona a cuyo favor haya de practicarse aquélla y que hagan fe, por sí solos o con el de otros documentos complementarios, o mediante formalidades cuyo cumplimiento se acredite."
En España, el Art. 33 del Reglamento Hipotecario es la disposición equivalente a nuestro citado Art. 43.
Don Ángel Sanz Fernández, en su obra *Instituciones de Derecho Hipotecario*, Madrid, Ed. Reus, 1953, T. II, págs. 315–316, ... nos comenta:

"... [La finalidad del concepto de documento complementario] es complementar el documento inscribible respecto de todos aquellos aspectos y circunstancias que siendo necesarios para la inscripción, no se acreditan y justifican directamente por aquél."
En su exposición, Sanz provee algunas características de los documentos complementarios y los describe de la forma siguiente:
"(a) *Por su contenido*—El documento complementario no es título a los efectos de la inscripción, pues no sirve de base al dominio o al derecho real o al asiento practicable.

---

[4] En ciertas ocasiones han resultado innecesarias y son obviadas. Véase *Sucn. Carrasquillo v. Registrador*, 95 D.P.R. 923, 930 (1968).

(b) *Por su naturaleza hipotecaria*—El documento complementario no es un documento inscribible. El documento inscribible es siempre el principal, el complementario sirve para demostrar o lograr la inscribilidad de aquél, pero carece de autonomía a los efectos registrales.

(c) *Por su forma*—Por no ser un documento inscribible no le es aplicable el art. 3 de la Ley y el 33 del Reglamento. Consecuencia de ello es que los documentos complementarios pueden ser documentos privados, salvo que por disposición legal distinta de la hipotecaria, requieran la forma pública y que no es precisa la presentación del documento mismo, siendo suficiente un testimonio notarial de él." Sanz, *op. cit.*, pág. 315.

En resumen, según lo expone Sanz, hay que distinguir entre el documento principal inscribible y los documentos complementarios. El autor discute la finalidad del documento complementario y expone que su propósito es complementar aquellos aspectos necesarios para hacer inscribible el documento principal. Señala que el documento complementario carece de autonomía para los efectos de la inscripción. Por lo tanto, no es un documento inscribible por sí mismo.

Roca Sastre, en la discusión del Art. 33 del Reglamento Hipotecario español nos dice:

"A base de estimar que las palabras *hacen fe* del art. 33 del Reglamento Hipotecario quieren expresar la idea de 'surten efecto' o 'son inscribibles', hay que afirmar que existen títulos que por sí mismos son inscribibles, mientras que hay otros que para ello necesitan el auxilio de otros documentos complementarios.

Estos documentos complementarios no son títulos propiamente dichos, pues en ellos no funda su derecho la persona a cuyo favor ha de practicarse la operación registral a efectuar, ni son base fundamental del asiento practicable. Únicamente complementan los títulos cuando éstos, solos, no pueden pretender su ingreso en los libros hipotecarios. Los títulos básicos autentican el acto o causa jurídica que provoca la titularidad consignable en el Registro. Los documentos complementarios solamente acreditan hechos o circunstancias que rodean aquellos títulos fundamentales, cooperando en la formación total del título inscribible." (Énfasis en el original.) R.M. Roca Sastre y L. Roca-Sastre Muncunill, *Derecho Hipotecario*, 5ta ed., Barcelona, Ed. Bosch, 1954, T. II, págs. 158–159.

Este Tribunal ha sostenido en varias ocasiones que los Registradores de la Propiedad tienen facultad para solicitar la producción de documentos complementarios en aquellos casos que: (1) Por ley o por reglamento así se requiera para la inscripción de un documento; (2) del documento surja causa para creer que

es inválido, y (3) el propio documento no refleje su entera validez. *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448 (1989); *Ruiz-Sierra v. Registrador*, 103 D.P.R. 578 (1975).

Fue correcta la actuación de la Registradora al requerir los documentos complementarios. *Alameda Tower Associates v. Muñoz Román*, 129 D.P.R. 698 (1992); Art. 64 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2267. La instancia de autos simplemente no es suficiente en derecho para alterar el estado de derecho registral y atemperarlo a la realidad extraregistral. Debe cumplirse con el documento de la sucesión hereditaria y cualquier otro que le permita al Registrador efectuar los trámites interesados. Art. 95 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2316.

Ahora bien, carece de razón la Registradora al sostener que los herederos de Pérez Toledo, y no el albacea Pérez, deben presentarla.

 Parte interesada es quien tiene interés o derecho en una cosa, negocio, transacción o pleito. No es difícil concluir que Pino, representada por Juan Agustín Rivero, está interesada legítimamente en la corrección del tracto sucesivo, por cuanto en la realidad extraregistral adquirió un título sobre el inmueble a través de una compraventa. Según el Art. 48(d) de la Ley Hipotecaria, 30 L.P.R.A. sec. 2251(d), la persona que represente al adquirente de un derecho, y tiene interés en asegurar su inscripción (incisos (a) y(c)), puede pedir la inscripción del título correspondiente en el Registro. Ciertamente, el que está facultado para "más", lo está para "menos", *i.e.*: si puede presentar un *título* para su inscripción puede presentar una instancia para aclarar lo relativo a su derecho.

 Ello nos lleva a examinar la *tercera* falta notificada para la "instancia", correspondiente a la *segunda* falta en "cesión", a saber, el requisito de "legalizar las firmas" en las certificaciones de funcionarios de una corporación para acreditar su autoridad para otorgar escrituras. *Royal Bank of Canada v. Registrador*, 105 D.P.R. 414

(1976). R.M. Roca Sastre, *Derecho Hipotecario*, 6ta ed., Barcelona, Ed. Bosch, 1968, T. II, pág. 588. La legitimación de tales firmas tiene el propósito de "imprimirle garantía de verdad que nace, prima facie, con la intervención notarial en la negociación privada, y así llevada al Registro de la Propiedad —donde la corrección, exactitud y verdad son corolarios y objetivos imprescindibles para su buen funcionamiento ...". *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110, 132 (1986).

Advertimos, sin embargo, que en ningún momento hemos exigido la juramentación por parte del funcionario corporativo de sus facultades para efectuar cualquier trámite requerido a nombre de la persona jurídica representada. El certificado de resolución presentado por Pino cumple con nuestros requerimientos jurisprudenciales. El notario público Jaime Aponte Parsi autenticó la firma de Irwin H. Flashman, Secretario Auxiliar de dicha entidad, quien certificó como correcta, conforme sus estatutos internos, la Resolución de la Junta de Directores de la Corporación que autorizó a Juan Agustín Rivero y ratificó los trámites de Alejandro Morales Gerena. No era necesaria ninguna otra juramentación.

La última falta en la "instancia" —no inscripción previa a favor de la sucesión hereditaria de Alberto Pérez Toledo— fue desistida por la Registradora excepto exigir acreditar la designación de herederos y las planillas de contribución sobre herencia.

■ El Art. 60 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2263, establece:

Los bienes inscritos a favor del causante *no necesitarán registrarse* a nombre de los mandatarios, representantes liquidadores, albaceas y demás personas que con carácter temporal actúen como órganos de actuación autorizados por las leyes.

Tampoco lo necesitarán a favor de los *herederos* cuando ratifiquen contratos privados realizados por sus causantes siempre que consten por escrito, firmados por éstos, que se protocoliza-

rán con la escritura de ratificación. *En todo caso deberá acreditarse el carácter de los herederos.* (Énfasis suplido.)

Ante estos preceptos, concurrimos con la Registradora sólo en cuanto a presentar los documentos complementarios, sin perjuicio a lo establecido en los Arts. 72.1 y 72.2 del Reglamento General, 30 L.P.R.A. secs. 2003-72.1 y 2003-72.2, edición especial.

## III

La primera falta en la Escritura Núm. 4 sobre "Cesión" y la primera y segunda de la Escritura Núm. 70 de "compraventa", son no haberse inscrito la segregación del lote de 464.33778 m.c. a favor del cedente, como de la finca principal a favor del vendedor, resultando así la inexistencia de tracto sucesivo.

La postura de la recurrente Pino Development Corp. es conflictiva. De un lado mantiene que la segregación del predio en cuestión ya se efectuó por medio de cierto *testamento*, y por el otro aduce que el lote "está siendo segregado" a través de la Escritura Núm. 70 de compraventa. La Registradora nos dice que "del historial de la finca principal no resulta nota de segregación alguna relacionada con la cabida de 464.33778 m.c."; tampoco la Escritura Núm. 70 solicita su segregación. Pino no ha proporcionado documento alguno del cual efectivamente surja esa segregación.

En estas circunstancias, rige el Art. 57 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2260. Bajo su concordante derogado —Art. 20 de la antigua Ley Hipotecaria, 30 L.P.R.A. sec. 45— en *Sucn. Carrasquillo v. Registrador*, 95 D.P.R. 923, 931–932 (1968), sostuvimos que " '[p]ara inscribir o anotar el título en que se transfiera o grave el dominio o la posesión de bienes inmuebles o derechos reales, deberá constar previamente inscrito o anotado el derecho de la persona que otorgue o en cuyo nombre se haga la transmisión o gravamen'. Es el llamado principio de tracto

sucesivo". "En su aspecto negativo (o registral o formal), este principio impide la inscripción de todo acto que no emane del titular registral, de suerte que se pueda lograr una sucesión encadenada de los asientos que refleje la historia registral de la finca. El cumplimiento de este requisito tiene que surgir del Registro al momento de efectuarse la toma de razón correspondiente, procediendo en tal caso la inscripción aunque al momento de la transacción el transmitente no hubiese sido el titular registral." H.M. Brau del Toro, *Apuntes para un curso sobre el estado del derecho inmobiliario registral puertorriqueño bajo la Ley Hipotecaria de 1893*, 48 (Núms. 2–3) Rev. Jur. U.P.R. 113, 143 (1979).

Y es que si una finca está inscrita a nombre de persona distinta del que la transfiere, estamos ante un defecto insubsanable del título que impide su inscripción. *Rivera v. Registrador*, 73 D.P.R. 720, 724 (1952); *Álvarez v. Registrador*, 57 D.P.R. 665 (1940); *Fournier v. Registrador*, 79 D.P.R. 796 (1957). El principio de tracto sucesivo exige continuidad en la identificación del titular registral; igual requisito para la realización de una segregación previa a una subsiguiente enajenación del inmueble segregado. No es inscribible la venta del remanente de un predio cuando no surge inscripción registral alguna de segregación previa. *Berlingeri v. Registrador*, supra, pág. 714. No era inscribible la cesión del predio, como tampoco su compraventa, por no haber mediado la previa segregación de la finca matriz.[5]

---

[5] El Art. 100 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), 30 L.P.R.A. sec. 2321, define "asiento defectuoso" como aquel que omite o expresa con inexactitud sustancial algún requisito. Las faltas que impiden la registración causan la inexistencia del acto o contrato objeto del registro o, también, la nulidad o anulabilidad del mismo o del documento presentado. Art. 68(1) de la Ley Hipotecaria, 30 L.P.R.A. sec. 2271.

Los Arts. 87(A)(1) y (A)(4), 30 L.P.R.A. sec. 2308, requieren que se exprese el nombre del titular de quien proceden inmediatamente los bienes o derechos que deban inscribirse; de la misma manera, el principio registral de tracto sucesivo no

A fin de cuentas, según comentamos en *Berlingeri v. Registrador*, supra, pág. 710, "[a] los efectos de calificar un instrumento presentado en el Registro de la Propiedad para su inscripción el Registrador tiene que atenerse a lo que resulte de los documentos presentados teniendo en cuenta los asientos del Registro referentes a la misma propiedad. *Esso Standard Oil Co. v. Registrador*, 88 D.P.R. 306 (1963); José Sabater, *Práctica Civil—Ley Hipotecaria*, pág. 406 (1945); Morell y Terry, *Comentarios a la Legislación Hipotecaria*, ed.1927, Tomo II, pág. 259". (Escolio omitido.)

Actuó correctamente la Registradora al dictaminar que la segregación era un paso previo indispensable para efectuar una enajenación posterior (compraventa) de la finca.

### IV

Igual dictamen se impone en cuanto a la omisión de informar los apellidos y las circunstancias personales de los herederos representados por el albacea testamentario en la escritura de "compraventa". Ante nos, las partes invocan diferentes legislaciones y, por ende, la necesidad o no de haber consignado esa información.

La Ley Notarial, Ley Núm. 99 de 27 de junio de 1956 (4 L.P.R.A. ant. sec. 1001n.), vigente a la fecha de la compraventa, requería el nombre y las demás circunstancias de los testigos. Sec. 10 de la Ley Notarial de 1956 (4 L.P.R.A. ant. sec. 1010). La Registradora se apoya en el Art. 15(d) de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2033)), que exige que la escritura pública contenga el nombre y los apellidos,

---

permite la omisión de eslabón alguno —en el caso de autos la segregación— en el historial de una finca.

además de las circunstancias personales de los otorgantes o testigos.(6)

Nuestro derecho registral está predicado en la certeza y corrección de sus inscripciones; para evitar la confusión y la comisión de errores, los asientos del Registro deben ser lo más completos y claros posibles. *Rosado Collazo v. Registrador*, 118 D.P.R. 577, 582 (1987); *Acevedo v. Registrador*, 115 D.P.R. 461, 462 (1984); *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991). "En la consecución de esos objetivos, la Ley Hipotecaria faculta al Registrador para calificar todos los documentos presentados ante él para su inscripción. *Mojica Sandoz v. Bayamón Federal Savs.*, [supra]; *Cabassa v. Registrador*, 116 D.P.R. 861 (1986)." *Rosado Collazo v. Registrador*, supra, pág. 582. No concebimos que para el notario u otorgantes sea gravoso requerir que se consigne sus nombres y apellidos, así como otras circunstancias. *Rosado Collazo v. Registrador*, supra, pág. 585.

En la escritura que nos ocupa era menester los nombres completos y circunstancias personales de los herederos representados por el albacea. Recordemos que "[l]a 'sucesión' como persona jurídica no existe en nuestro derecho". *Danz v. Suau*, 82 D.P.R. 609, 614 (1961). Para muchos menesteres legales, es pues necesario que la sucesión "se particularice e individualice expresando los nombres de los miembros que la componen". Véase *Fuentes v. Tribl. de Distrito*, 73 D.P.R. 959, 987 (1952).

Al comparar los requisitos de la Ley Notarial anterior y la vigente, notamos que sus propósitos eran idénticos; de-

---

(6) También exige el cumplimiento con el Art. 64 de la actual Ley Hipotecaria, 30 L.P.R.A. sec. 2267, y con el Art. 99.4 de su reglamento, 30 L.P.R.A. sec. 2003-99.4, edición especial: apellidos y circunstancias personales de los comparecientes en las escrituras. El equivalente en la vieja Ley Hipotecaria vigente en 1977 era el Art. 9(5), 30 L.P.R.A. ant. sec. 34, hoy Art. 87(A) de la Ley Hipotecaria, 30 L.P.R.A. sec. 2308. Véase, también, el Art. 63(9) del Reglamento para la Ejecución de la Ley Hipotecaria de 1893 (30 L.P.R.A. sec. 921). Las diferencias son más aparentes que reales.

bemos, pues, darles la misma interpretación a sus disposi-
ciones correlativas. Los requisitos de ambas leyes armoni-
zan fácilmente.

Mediante la falta Núm. 4 de la compraventa se señaló
que los herederos de Pérez Toledo no comparecieron como
peticionarios en el Caso Civil Núm. 74-12-275. Pino sos-
tiene que era innecesaria, pues los herederos estaban re-
presentados por Filiberto Pérez, albacea testamentario.

▮▮▮ La cuestión requiere repasar suscintamente las
facultades del albacea testamentario. Los Arts. 823 y
824(4) del Código Civil, 31 L.P.R.A. secs. 2520 y 2521, res-
pectivamente, intiman que "[l]os albaceas tendrán todas
las facultades que expresamente les haya conferido el tes-
tador; y no sean contrarias a las leyes". De no haberse de-
terminado las facultades de éstos a través del testamento,
los albaceas podrán "[t]omar las precauciones necesarias
para la conservación y custodia de los bienes, *con interven-
ción de los herederos presentes*". (Énfasis suplido.)

El albacea ha sido designado por el causante para que
ejecute su última voluntad. M. Albadalejo, *El albaceazgo
en el derecho español*, Madrid, Ed. Tecnos, 1969, pág. 20.

En *González Muñiz, Ex parte*, 128 D.P.R. 565, 572
(1991), señalamos:

> El Código Civil no señala taxativamente la responsabilidad
> de los albaceas. Este vacío ha sido la génesis de un debate doc-
> trinario entre muchos tratadistas que intentan ubicar el alba-
> ceazgo dentro de otras figuras definidas, tales como el mandato,
> la representación y la administración. J. Castán Tobeñas, *De-
> recho civil español, común y foral*, 6ta ed., Madrid, Ed. Reus,
> 1944, T. IV, pág. 610; F. Sánchez Román, *Estudios de Derecho
> Civil*, 2da ed., Madrid, Est. Tipográfico "Sucesores de Rivade-
> neyra, 1910, T. VI, Vol. 2, pág. 1380 y ss; C. De Diego, *Institu-
> ciones de derecho civil español*, Madrid, Artes Gráficas Julio
> San Martín, 1959, T. III, pág. 257 y ss.; M. Royo Martínez,
> *Derecho Sucesorio Mortis Causa*, Sevilla, Ed. Edelce, 1951, pág.
> 315; F. Bonet Ramón, *Jurisprudencia del Tribunal Supremo:
> comentario a sentencia Núm. 309 de 5 de julio de 1947*, 31 Rev.
> Der. Priv. 868, 887 (1947); Valverde, *Tratado de Derecho Civil*

*Español*, 4ta ed., Valladolid, Talleres Tipográficos Cuesta, 1939, T. V, pág. 350 y ss.

■ El "[a]lbacea tiene aquellas facultades que podrían llamarse secundarias o instrumentales, que sean necesarias para el ejercicio de las otorgadas por el testador o para su normal utilización ...". *Ab Intestato Marini Pabón*, 107 D.P.R. 433, 438 (1978). Véanse: Art. 824 del Código Civil, *supra*; *Paine v. Srio. de Hacienda*, 85 D.P.R. 817 (1962); *Mercado v. Mercado*, 66 D.P.R. 811 (1947); Albadalejo, *op. cit.*, pág. 242.

■ La jurisprudencia ha establecido que cuando los albaceas tienen facultad para vender bienes inmuebles no es necesario la intervención de los herederos, siempre que sean *voluntarios*. *Irizarry Cordero v. Registrador*, 89 D.P.R. 747, 751 esc. 2 (1964); *Vilella v. Registrador*, 36 D.P.R. 795 (1927); *Estate of Harry McCormick v. Registrador*, 39 D.P.R. 474, 476 (1929); *Acuña v. Registrador de San Juan*, 28 D.P.R. 423, 424–425 (1920); *Sucesión Criado v. Martínez et al.*, 25 D.P.R. 334, 339 (1917). Como corolario, no puede sin la concurrencia de los herederos forzosos. E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. II, págs. 492–493.

■ Como indicamos en *Paine v. Srio. de Hacienda*, supra, pág. 820:

> Nada se encontrará en nuestro ordenamiento jurídico que nos permita considerar el albaceazgo como una entidad jurídica distinta a los herederos que representan. El albaceazgo no es otra cosa que una administración acompañada de un derecho de representación para cumplir ciertas funciones específicas relacionadas con la conservación del caudal hereditario hasta el momento en que la herencia sea adida por los herederos, y como tal, tampoco podemos considerar a los albaceas como que forman una persona jurídica distinta a los herederos: Véase *Fuentes v. Srio. de Hacienda*, 85 D.P.R. 492... (1962).

■ En resumen, aunque el testador confiera al albacea facultad para enajenar, su ejercicio está supeditado a

la *concurrencia de los herederos forzosos*. Procedió correctamente la Registradora.

Las faltas quinta a octava de la escritura de "Compraventa" no fueron discutidas por la recurrente Pino. Nuestro derecho registral estima cometidos dichos defectos después de pasados los veinte (20) días para interponer la "recalificación". Art. 70 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2273; Art. 89.3 del Reglamento General, 30 L.P.R.A. sec. 2003-89.3, edición especial. Sin más discusión, procede confirmarlas.

## V

El tercer defecto en la escritura de "cesión" consistió en no expresar el valor de la agrupación. Pino argumenta que esa información era innecesaria, ya que el objetivo del valor de un inmueble a inscribirse está relacionado con los derechos arancelarios a cancelar, y la Autoridad de Acueductos y Alcantarillados no cancela derechos en los instrumentos públicos.

El cumplimiento relativo a la expresión del valor del inmueble objeto de inscripción obedece al requisito del Art. 87(a)(2) de la Ley Hipotecaria, 30 L.P.R.A. sec. 2308. Desde temprano, el derecho registral y la jurisprudencia honraron la mencionada exención. Véanse: Ley Núm. 91 de 30 de mayo de 1970 (30 L.P.R.A. sec. 1767a–1767e; *E.U.A. v. Registrador*, 116 D.P.R. 269 (1985); *Alonso v. Tribl. Examinador de Médicos*, 74 D.P.R. 158 (1952); *Valdespino v. Junta de Retiro*, 69 D.P.R. 941 (1949); *The R.F.C. Mortgage Co. v. Registrador*, 60 D.P.R. 235 (1942). Ahora bien, es incorrecto atribuirle al requisito del valor inmueble efectos sólo para el monto de derechos a ser cancelados. Aunque ello depende de la valoración, y ésta a su vez de numerosos factores —*Empire Life Ins. Co. v. Registrador*, 105 D.P.R. 136 (1976); *Basora Defilló v. Srio. de Hacienda*, 88 D.P.R. 1 (1963)— su necesidad responde al principio de *especifica-*

*ción registral*: el valor es parte de la identificación del predio como derecho inmobiliario a registrarse. La Asamblea Legislativa siempre ha sido consciente de la necesidad de atemperar y actualizar la información en el Registro con la realidad cambiante extraregistral. Así la información del Registro se mantiene "al día", al menos en lo que al valor del inmueble concierne. *Aponte Parés v. Registrador*, 106 D.P.R. 176 (1977).

Como bien señala la Registradora, estar exento de cancelar derechos es muy distinto a estar obligado a expresar el valor del inmueble objeto de inscripción. Aunque ambos preceptos coinciden, no agotan sus propósitos.

La cuarta falta en la "Cesión" —no consignar el número de Seguro Social de los otorgantes— es improcedente. Así lo acepta la Registradora. Ese requisito en la actual Ley Notarial de 1987 no obliga la redacción de instrumentos públicos otorgados con anterioridad a su vigencia.

*Se dictará la correspondiente sentencia que confirme a la Registradora.*

Los Jueces Asociados Señores Hernández Denton y Alonso Alonso concurrieron con el resultado sin opinión escrita.